1
2
3
4

Michael Garth Moore (023742)
4370 N. Via Entrada Hermosa
Tucson, Arizona 85718
Telephone: 888-318-0075
mike@mgmoorelaw.com

5
6
7
8

Joseph P. St. Louis (011728)
Nesci & St. Louis
216 N. Main Avenue
Tucson, AZ 85701
Telephone: 520-622-1222
joestlouis@azdefense.com

9

*Trial Counsel for Plaintiffs*

10
11
12

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

13
14
15
16

Justin Stein
4300 West Bunk House Road
Tucson, Arizona 85741

and

17
18
19
20

Jacqueline Stein
4300 West Bunk House Road
Tucson, Arizona 85741,

and

21
22
23

C.O.S, a minor, by his mother and
Legal Guardian Jacqueline Stein
4300 West Bunk House Road
Tucson, Arizona 85741,

24

Plaintiffs,

25
26

-vs-

27
28

Alyssa Depke
Arizona Department of Child Safety
3550 N. Oracle Road

:

:

:

:

Case No. 4:20-cv-00102-JGZ

**FIRST AMENDED COMPLAINT
COMPLAINT**

**AND**

**COMPLAINT FOR
DECLARATORY JUDGMENT**

Hon. Jennifer G. Zipps

Jury Demand Endorsed Hereon

1 | Tucson, Arizona 85705,                              :

2 |         and

3 |
4 | Lyssa A. Fregoso
  | Arizona Department of Child Safety
5 | 3550 N. Oracle Road
  | Tucson, Arizona 85705,                              :
6 |
7 |         and

8 | Valarie Brown
  | Arizona Department of Child Safety
9 | 3550 N. Oracle Road
10 | Tucson, Arizona 85705,                              :

11 |        and

12 |
13 | Pauline Machiche
  | Arizona Department of Child Safety
14 | 1450 S. Eastside Loop
  | Tucson, Arizona 85710,                              :
15 |
16 |        and

17 | Mike Faust
18 | Director
  | Arizona Department of Child Safety
19 | 3003 N Central Ave
  | Phoenix, Arizona 85012,                             :
20 |
21 |        and

22 | Doug Ducey
23 | Governor
  | State of Arizona
24 | 1700 W Washington St.
25 | Phoenix, AZ 85007,

26 |        Defendants.                                  :

27 | -------------------------------------------------------------------------------------------------

28 |

Debra L. Greene
6985 East Mary Drive
Tucson, Arizona 85730,                              :

     and

K.C.G, a minor, by his mother and
Legal Guardian, Debra L. Greene,

     Plaintiffs.                              :

     -vs-

Gerardo Fernandez
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                              :

     and

Amanda Downing
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                              :

     and

Christy Shay Hurd
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                              :

     and

Katelyn Galvin
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                              :

     and

Sarah Escamilla
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                                  :

        and

Pauline Machiche
Arizona Department of Child Safety
1450 S. Eastside Loop
Tucson, Arizona 85710,                                  :

        and

Mike Faust
Director
Arizona Department of Child Safety
3003 N Central Ave
Phoenix, Arizona 85012,                                 :

        and

Doug Ducey
Governor
State of Arizona
1700 W Washington St.
Phoenix, AZ 85007                                       :

        Defendants.

------------------------------------------------------------------------------------------------------

Grace E. Reid, aka Grace E. Pelzel
7744 W. Running Bear Dr.
Tucson, Arizona 85743,                                  :

        and

Kelly S. Graft
7744 W. Running Bear Dr.
Tucson, Arizona 85743,                                  :

        Plaintiffs.

4

1           -vs-

2    Rebecca Bustamante

3    Arizona Department of Child Safety
     3550 N. Oracle Road

4    Tucson, Arizona 85705,                          :

5
            and
6

7    James Hanson
     Arizona Department of Child Safety

8    3550 N. Oracle Road
     Tucson, Arizona 85705,                          :

9           and

10

11   Valarie Brown
     Arizona Department of Child Safety

12   3550 N. Oracle Road
     Tucson, Arizona 85705,                          :

13

14          and

15   Josie Guzman

16   Arizona Department of Child Safety
     3550 N. Oracle Road

17   Tucson, Arizona 85705,                          :

18
            and
19

20   Pauline Machiche
     Arizona Department of Child Safety

21   1450 S. Eastside Loop
     Tucson, Arizona 85710,                          :

22

23          and

24

25   Mike Faust
     Director

26   Arizona Department of Child Safety
     3003 N Central Ave.

27   Phoenix, Arizona 85012,                          :

28
            and

Doug Ducey
Governor
State of Arizona
1700 W Washington St.
Phoenix, AZ 85007,                                    :

     Defendants.

---

# FIRST AMENDED COMPLAINT

## I.     PARTIES AND JURISDICTION

1.     At all times pertinent hereto, Defendant Mike Faust was, and is, the Director of the Arizona Department of Child Safety [hereafter "AZDCS"]. In that capacity, he was, and is, personally responsible for the approval of formulation and implementation of policies and practices undertaken by staff, caseworkers and investigators, who are charged with the decision whether or not to initiate a Voluntary Safety Plan [ hereafter, "VSP"] under A.R.S. §8-806, when the agency receives requests by parents for assistance in obtaining respite care and services for a child in the family whose conduct presents a danger to himself or herself, other children, and/or the parents. He was, and is, also responsible to approve training of staff, caseworkers and investigators. Faust is sued in his official and individual capacities;

2.     At all times pertinent hereto, Defendant Pauline Machiche was, and is, the Pima County Regional Program Administrator employed by AZDCS, reporting to the Director. In that capacity, she was, and is, personally responsible for all training and

enforcement of policies and procedures in the region. Machiche is sued in her official and individual capacities;

3.      At all times pertinent hereto, Defendant Alyssa Depke was a Specialist caseworker employed by AZDCS. She is sued in her individual capacity. The actions alleged herein were taken by Depke in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Stein family under the Constitution of the United States;

4.      At all times pertinent hereto, Defendant Lyssa Fregoso was a Supervisor employed by AZDCS, who engaged in and ratified the actions of Depke. She is sued in her individual capacity. The actions alleged herein were taken by Fregoso in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Stein family under the Constitution of the United States;

5.      At all times pertinent hereto, Defendant Valarie Brown was a TDM Facilitator employed by AZDCS, who engaged in and ratified the actions of Depke and Fregoso (Stein family) and the actions of Bustamante, Hanson and Guzman (Reid)**. She is sued in her individual capacity. The actions alleged herein were taken by Brown in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Stein and Reid families under the Constitution of the United States;

6.      At all times pertinent hereto, Defendant Gerardo Fernandez was a Specialist employed by AZDCS. He is sued in his individual capacity. The actions alleged herein were taken by Fernandez in his capacity with AZDCS, and were done with malice,

oppression and reckless disregard of the protections afforded the Greene family under the Constitution of the United States;

7.     At all times pertinent hereto, Defendant Amanda Downing was a Specialist employed by AZDCS. She is sued in her individual capacity. The actions alleged herein were taken by Downing in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Greene family under the Constitution of the United States;

8.     At all times pertinent hereto, Defendant Christy Hurd was a Supervisor employed by AZDCS, who engaged in and ratified the actions of Fernandez and Downing. She is sued in her individual capacity. The actions alleged herein were taken by Hurd in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Greene family under the Constitution of the United States;

9     At all times pertinent hereto, Defendant Sarah Escamilla was a Supervisor employed by AZDCS, who engaged in and ratified the actions of Fernandez and Downing. She is sued in her individual capacity. She is sued in her individual capacity. The actions alleged herein were taken by Escamilla in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Greene family under the Constitution of the United States;

10.     At all times pertinent hereto, Defendant Katelyn Galvin was a TDM Facilitator employed by AZDCS, who engaged in and ratified the actions of Fernandez, Downing, Hurd and Escamilla. She is sued in her individual capacity. The actions alleged

herein were taken by Galvin in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Greene family under the Constitution of the United States;

11.     At all times pertinent hereto, Defendant Rebecca Bustamante was a Specialist employed by AZDCS. She is sued in her individual capacity. The actions alleged herein were taken by Bustamante in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Reid family under the Constitution of the United States;

12.     At all times pertinent hereto, Defendant James Hanson was an Investigator employed by AZDCS. He is sued in his individual capacity. The actions alleged herein were taken by Hanson in his capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Reid family under the Constitution of the United States;

13.     At all times pertinent hereto, Defendant Josie Guzman was a Supervisor employed by AZDCS, who engaged in and ratified the actions of Bustamante and Hanson. She is sued in her individual capacity. The actions alleged herein were taken by Guzman in her capacity with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Reid family under the Constitution of the United States;

14.     This case is brought to vindicate rights of the Plaintiffs secured by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983;

15.     This Court has jurisdiction of this case pursuant to federal question jurisdiction, 28 U.S.C. §1331;

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391;

## II.     ARIZONA STATUTES APPLICABLE TO THE ACTIONS OF DEFENDANTS AND THE DEPARTMENT'S FAILURE TO IMPLEMENT THE PROVISIONS OF A.R.S. §8-806 [VOLUNTARY PLACEMENT AGREEMENTS]

17.     Plaintiffs reallege Paragraphs 1 through 16 as if fully set forth herein;

18.     When a report is made to AZDCS through it's "hotline" or by other means, the agency shall determine whether to open a case if further investigation is determined to be necessary;

19.     One or more Specialist/investigators are assigned to make contact with a family and to assess a child's welfare and safety in the home, among other responsibilities;

20.     Under ARS §§8-821 and 8-822, an AZDCS investigator is empowered to seize and remove the child from the family home without the parents' agreement under two circumstances: (1) he or she documents the reasons, presents those to the supervisor, who approves the removal, or (2) in an emergency, the investigator is empowered to seize and remove a child without consultation with his or her supervisor, but must provide the documentation and obtain approval no later than two (2) hours after removal;

21.     Upon removal of the child, custody is transferred from the parent or parents to the caseworker/investigator and/or AZDCS. A.R.S. § 8-821. Two provisions apply to this action. First, under subsection (c) the statute states that removal is lawful "if *independent probable cause exists* to believe that temporary custody is clearly necessary

to protect the child from suffering abuse or neglect." (emphasis added). Second, an investigator may seize and remove a child without a court order "if temporary custody is clearly necessary to protect the child because exigent circumstances exist." Subsection 8-821(D). Exigent circumstances are defined as follows:

> K.      For the purposes of this section, "exigent circumstances" means there is probable cause to believe that the child is likely to suffer serious harm in the time it would take to obtain a court order for removal and either of the following is true:
>
> 1.      There is no less intrusive alternative to taking temporary custody of the child that would reasonably and sufficiently protect the child's health or safety.
>
> 2.      Probable cause exists to believe that the child is a victim of sexual abuse or abuse involving serious physical injury that can be diagnosed only by a physician who is licensed pursuant to title 32, chapter 13 or 17 or a health care provider who is licensed pursuant to title 32 and who has specific training in evaluations of child abuse.

22.      AZDCS is also tasked by statute with assisting families who reach out to the agency when the family is in crisis because, among other factors, the parent(s) believe the child requires immediate psychiatric or other evaluations and respite care, because the family believes the child is a danger to himself or herself, siblings, or the parents. This statute is A.R.S. §8-806;

23.      Pursuant to A.R.S. §8-806, DCS may undertake a Voluntary Placement Agreement:

> D.      The department may accept a voluntary placement agreement only if the department can provide necessary services that are likely to remedy the circumstances that bring the child into care within the ninety-day period and one of the following applies:

1.     The department plans to return the child to the parent, guardian or custodian who signed the child into voluntary placement.

2.     While the child is in voluntary placement, the parent, guardian or custodian arranges a safe alternative placement for the child after the voluntary placement.

24.     Further, the parents' agreement to voluntary placement carries no stigma, nor does it expose the parents to exposure that the child will be adjudicated dependent by neglect or abuse with the attendant impairment of liberties by being placed on the department's "central registry" under A.R.S. §8-804:

G.     The fact of voluntary placement does not constitute abandonment, abuse or dependency as defined in this article and may not be used in a judicial proceeding as an admission of criminal wrongdoing by that parent, guardian or custodian.

25.     Thus, the parent does not face loss of even temporary custody of the child, nor right to make decisions about the child's welfare, health and safety, and all other attributes of the familial association;

26.     AZDCS is obligated by law to not only provide respite care, but to provide "comprehensive medical care" to any child eligible for VSP and any child of whom the agency has taken custody by removal. A.R.S. §8-512(A);

27.     The comprehensive medical care required obligates AZDCS to proactively insure that every child so situated actually receives the medical evaluations and treatment recommended in a timely manner. A.R.S. §8-512(B);

28.     Defendant Faust has failed to, among other necessary actions, (1) promulgate clear and effective rules and regulations that allow staff to implement the

provisions of A.R.S. §8-806, A.R.S. §8-512(A) and 512(B); (2) has failed to train staff in the constitutional and statutory authorities which constrain AZDCS investigators from engaging in "exigent" removals and filing of dependency petitions when faced with a family that is requesting assistance applicable under the statute; (3) has failed to train staff in recognizing and understanding the psychological impact on parents of becoming aware that a child represents a danger, and assisting the parents to make informed judgments about the voluntary placement and post-placement responsibilities and opportunities for the parents to continue to work to the child's benefit; (4) has failed to engage in mutual agreements and other associations with other state or federal agencies and non-governmental organizations ("NGO") so that AZDCS has a full complement of resources for services to be provided under section the above-identified statutes; (5) has failed to promulgate policies which call for the presence of a section 8-806 coordinator in each of the AZDCS regions, to whom investigators have immediate access in the event they face uncertainty in the agency's response to parents in need, and the organizational documents which would apply;

29.     Faust has, therefore, fostered a practice of failing to provide children in AZDCS care with medically necessary diagnostic and treatment services. Further, as alleged below with regard to the specific families, Faust has created a practice which renders the "Child and Family Team" ("CFT") process less than useless, including the failure of case managers to regularly participate in CFT's; insufficient clinical oversight and involvement in CFT's; inadequately trained CFT facilitators; service plans generated

based not on necessary services but on available ones; and the agency's power to veto critically necessary mental health evaluations and treatment;

### III.    FACTS RELEVANT TO THE CASES

### FACTS: REMOVAL OF "C.O.S." FROM THE CUSTODY OF JUSTIN AND JACQULINE STEIN

30.    Plaintiffs reallege Paragraphs 1 through 29 as if fully set forth herein;

31.    Plaintiffs Justin and Jacqueline Stein are husband and wife, and the natural parents of C.O.S., born in 2010;

32.    Early in his life, C.O.S. was diagnosed on the autism spectrum, and presented with behavioral issues, including aggressive behaviors. C.O.S. was non-verbal which contributed to the stress on the parents and him;

33.    Up to and until 2019, all three Plaintiffs resided together, as well as a younger female sibling of C.O.S.;

34.    The Stein family had been residing in Kingman, Arizona, when they learned their area could not provide the services that had been recommended, prompting them to move to Tucson. Shortly thereafter, C.O.S. was taken on as an outpatient of Intermountain Centers for Human Development [hereafter, "Intermountain"] in Tucson;

35.    In the months leading up to October 2019, C.O.S. was receiving occupational and speech therapy, applied behavioral therapy, and the parents had engaged the services of Arizona Autism, an NGO which was assisting in the family's needs;

14

36.     Shortly before October 9, 2019, C.O.S. exhibited behaviors such as not sleeping, not wanting to play with his toys, and withdrawing from contact with others. Concerned about this dramatic change in C.O.S.'s behavior, Mr. and Mrs. Stein consulted a therapist at Theraplay4kidz, where C.O.S. was receiving therapy;

37.     Eight days later, on October 9, 2019, upon returning home from C.O.S.'s biannual dental appointment, C.O.S. attacked his father while Mr. Stein was driving the two home, causing Mr. Stein to swerve and almost lose control of the car;

38.     Upon arriving home Justin was extremely distraught, and consulted with Jacqueline. Both decided that C.O.S. was in a crisis situation, that he was dangerous to them and their daughter, and that he needed immediate psychiatric evaluation and medication;

39.     The parents called both C.O.S.'s Arizona Department of Developmental Disabilities (hereafter "AZDDD") support coordinator, then the support coordinator at Intermountain, but were unable to speak to either;

40.     They then called C.O.S.'s teacher, who advised that they call the Crisis Response Center [hereafter, "CRC"], which they immediately did;

41.     That afternoon, two staff from CRC came to the home. After consulting with them, and learning of the difficulty of getting crisis services, Jacqueline followed the advice of the CRC staffers who told her to call the AZDCS Hotline because, according to them, DCS could more quickly secure the services the parents needed;

42.     A call was made to the Hotline, the call taker taking the information, and the parents were apprised that the AZDCS caseworker would be coming to the home. The CRC staff then left;

43.     In mid-afternoon on October 9th, Defendant Alyssa Depke, DCS Specialist, came to the home;

44.     In response to Jacqueline's recounting the history of the situation leading up to the crisis, and her request that C.O.S. be removed from the home for only long enough to secure the evaluation and treatment the parents sought, Depke's response was, "I am not a babysitter." Depke claimed that the agency could not undertake what the parents were asking, and that the only way she would take C.O.S. was if the parents admitted they were neglecting C.O.S., and the agency would file a dependency petition, with negative ramifications for the parents. Upon hearing that information, Jacqueline stated she no longer wanted her son to be removed, however Depke informed her that was no longer an option;

45.     Depke then left the house, and returned with Defendant Lyssa Fregoso, AZDCS Supervisor. Both women handed Plaintiffs a Temporary Custody Notice naming abuse or neglect as the reason for the involuntary seizure of C.O.S., and the child was then removed by both Defendants;

46.     Although both Defendants knew the family qualified for a VSP under A.R.S. §8-806, they concealed that from the parents;

47.     At the time they seized C.O.S., they knew he was not in any danger of physical or sexual abuse from either parent;

16

48.     C.O.S. was transported by Depke to a foster home, where shortly thereafter, he decompensated and became extremely agitated and aggressive, so much so that the foster parents demanded his removal. At the time of placement in the foster home, Defendants sought no evaluation from a psychiatric professional as to the consequences of an emergency removal without a plan for services;

49.     Defendants removed C.O.S. from the foster home on the morning of October 11th  and transported him to the Crisis Response Center. The Intermountain support coordinator, Lynn Saturley, spoke with Defendant Depke and recommended an immediate psychiatric evaluation. None of these events were shared with the parents for their approval or even consideration;

50.     On the same day as the CRC transfer, and while a psychiatric evaluation was being done, and C.O.S. was prescribed medication, Defendants convened a TDM. Defendant Valarie Brown was the facilitator. Two representatives of Intermountain were present, as well as a representative of AZDDD;

51.     During the TDM, Defendants Depke and Fregoso intentionally or recklessly fabricated information regarding the parents, their desires, and the situation in the family. They also omitted material information which would have influenced the outcome of the TDM, including the fact that C.O.S. had been admitted to the CRC and was prescribed medication. Although all Defendants knew that the family situation qualified for a VSP and that no dependency filing was appropriate, they concealed this information from the parents. As a result of these fabrications and omissions, C.O.S. remained in AZDCS custody with the parents having no familial rights;

52.     That same day, upon evidence previously prepared by Defendants Depke and Fregoso in the form of a "Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing," the Arizona Attorney General filed a Dependency Petition against the parents, which was docketed as Case No. JD20190583;

53.     The dispositive "evidence" in the Report was intentionally or recklessly fabricated by the Defendants, and the Defendants made material omissions in it, with the intent to secure the involvement of the Attorney General in moving forward with the case against the parents. And that intent succeeded, the Attorney General relying on the fabricated evidence and the absence of exculpatory evidence concealed by Defendants filing and prosecuting the case;

54.     The Attorney General prepared and filed a Dependency Petition that falsely accused both Justin and Jacqueline of neglect of C.O.S., incorporating many of the fabrications in the Petition as justification;

55.     Later in the afternoon of October 11th, Intermountain's Lynn Saturley convened a telephonic "CRC staffing." On the phone were, among others, Fregoso and the parents, as well as a representative of the CRC. After learning of the current status of C.O.S., during a discussion of the next steps, Plaintiffs proposed that they pick up C.O.S., take him to a medical evaluation, and if medically cleared, C.O.S. return home with them. Fregoso refused that proposal, only stating that AZDCS would have to "staff internally";

56.     As a result of Defendants' objections, C.O.S. remained at CRC, and transferred to a group home, this time with direct oversight and consultation with Intermountain's Director;

57.     C.O.S.'s life was dramatically disrupted by the Defendants' actions, including being moved from homes, being held in threatening environments, and having his family and school life severed;

58.     On October 14th, Defendants secured, on the basis of the fabricated evidence, an *ex parte* Order from the Juvenile Court continuing AZDCS custody of C.O.S., and the severing of familial association with the parents;

59.     On October 17, 2019, at the Preliminary Protective Hearing, on the basis of the true evidence submitted by the parents, the Juvenile Court reversed itself on placement, and ordered C.O.S. returned to the family. Defendants, however, continued the prosecution of the dependency case thereafter;

60.     On January 2, 2020, the Attorney General, when faced with the parents' intent to contest the dependency allegations, instead dismissed the case;

61.     As a direct and proximate result of Defendants' actions, Plaintiffs Justin, Jacqueline Stein, and C.O.S., were denied their right to familial association under the First and Fourteenth Amendment to the Constitution of the United States; and their right to due process under the Fifth and Fourteenth Amendments to the Constitution;

**FACTS: REMOVAL OF K.C.G. FROM CUSTODY OF DEBRA GREENE**

62.     Plaintiffs reallege Paragraphs 1 through 61 as if fully set forth herein;

63.     K.C.G., a minor male child, was born in 2010, under a different name;

64.     In or about May 2018, Plaintiff Debra Greene adopted K.C.G., along with two other siblings, both minor male children;

19

65.     Subsequent to the adoption, Plaintiff learned the natural parents of the brothers had engaged in sexual abuse of at least K.C.G. before custody was taken from them;

66.     K.C.G. began exhibiting inappropriate sexual behaviors towards the older of the two younger siblings. Over time he exhibited other behaviors, such as being abusive towards animals, having a fixation on death and being detached;

67.     In 2019, Plaintiff moved the family to Tucson, where she had more resources to assist her in dealing with the issues. However, despite Plaintiff's efforts, K.C.G. continued to attempt to gain inappropriate access to his sibling;

68.     In or about the beginning of September 2019, Plaintiff made contact with Intermountain, where K.C.G. was evaluated and counselling sessions were set to begin;

69.     On September 25, 2019, K.C.G. was taken by Plaintiff to the CRC, where he was evaluated for several hours. Following that, a staffer informed Plaintiff that she, the staffer, agreed K.C.G. was a danger to his siblings and advised Plaintiff to contact AZDCS to secure a temporary placement and treatment for K.C.G.. A recommendation was made of the need for an urgent psychosexual and psychiatric evaluation of K.C.G.;

70.     Plaintiff called the AZDCS Hotline and informed the call taker that she was calling to establish voluntary placement for K.C.G.. She informed the call taker of the recommendation for the urgent evaluations as well as intensive in home or out of home counselling for the two siblings;

71.     Plaintiff returned home, and later that day Defendants Gerardo Fernandez and Amanda Downing appeared at the home;

20

72.     Both AZDCS investigators were immediately hostile to Plaintiff. When she attempted to speak with them about voluntary placement options for K.C.G., the Defendants offered nothing. The only question asked of her was whether she would take in-home services, though none were identified. Plaintiff responded that she was not against such services, but that more was required, and that K.C.G. needed to be out of the home until the evaluations were completed;

73.     As Plaintiff continued to speak about voluntary placement, Downing responded that "we are not some babysitting service that takes care of your kids every time you are unwilling or unable," At this point, Fernandez handed Plaintiff a TCN, which identified "neglect" as the justification for an exigent removal. At no time did either Defendant assert that K.C.G. was in immediate danger of physical or sexual abuse at the hands of any adult;

74.     When Plaintiff saw the TDM, she informed the Defendants that CRC must have misinformed her of AZDCS services, and that she did not want them, and would seek assistance elsewhere. Fernandez informed her that he and Downing would be taking K.C.G. and commencing a dependency action against her. Before making this decision, Defendants consulted with, and received approval from Defendant Supervisor Christy Shay Hurd;

75.     K.C.G. was eventually transported to a group home outside Tucson;

76.     Two days later, Defendants convened a TDM, facilitated by Defendant Galvin, at which Hurd and Fernandez, as well as others appeared. During the TDM, Defendants gave fabricated information regarding the events on the date of the removal.

Further, the Defendants falsely reported they had "concerns of possible emotional abuse of K.C.G. as well as scapegoating." These claims were false, and were made by the Defendants with the goal of justifying the exigent removal and prosecuting Plaintiff in a dependency action for neglect. Further, Defendants omitted material facts which were exculpatory of Plaintiff. As a result of these fabrications and material omissions, the Defendants informed Plaintiff that K.C.G. would remain out of the home, thus, severing Plaintiff's familial association rights;

77.    On or about the 27th of September, Defendants Hurd and Fernandez prepared a report and provided documents to the Arizona Attorney General in order to justify the filing of a dependency petition. Relying on the truthfulness of the information, the Attorney General filed on September 30, 2019 "DCS's Dependency Petition and Petition for Paternity and/or Child Support," assigned Case No. JD20190553;

78.    The Petition charged Plaintiff with abuse and/or neglect, and, in the facts supporting the filing, recounted fabrications created by Defendants;

79.    At some point after September 30th, Defendant Sarah Escamilla was assigned as the Supervisor of continuing care of K.C.G.;

80.    On October 2, 2019, a Preliminary Protective Hearing was held in Juvenile Court. Based on the Defendants' fabrications and material omission of fact, the Court ordered the temporary placement of K.C.G. to remain outside of the home, and continued the severance of Plaintiff's familial association with K.C.G.;

81.    During the remaining course of the proceedings, Plaintiff repeatedly attempted to secure for K.C.G. the urgent psychosexual and psychiatric evaluations, and

22

follow up care, that had been recommended. Repeatedly, Plaintiff was frustrated by Defendant Escamilla's fabrications and obstruction of both Plaintiff's requests and those of independent professionals;

82.     As a result, the urgently needed evaluations were not done in a timely manner, and therapeutic interventions were substantially delayed. This was further aggravated by Escamilla's moving K.C.G. from one group home to another, and the complete disruption of K.C.G.'s education and home life;

83.     On or about October 17, 2019, at a second hearing on temporary custody, Defendant Fernandez admitted that K.C.G. was not, and could not be proven to have been, in danger from Plaintiff, that there was no neglect;

84.     On or about November 9, 2019, Escamilla agreed to K.C.G. being returned to Plaintiff's home, provided that Plaintiff arranged for alternative living accommodations for K.C.G.'s two siblings. With great difficulty, Plaintiff secured those arrangements, which required the two siblings to move to Oregon, and K.C.G. was returned home;

85.     On December 30, 2019, the Attorney General dismissed JD20190553. K.C.G. was never adjudicated a dependent child, and Plaintiff was never adjudicated to have abused or neglected him;

86.     As a direct and proximate result of Defendants' actions, Plaintiffs Debra Greene and K.C.G. were denied their right to familial association under the First and Fourteenth Amendment to the Constitution of the United States; and their right to due process under the Fifth and Fourteenth Amendments to the Constitution;

**FACTS: REMOVAL OF L.S.G. FROM CUSTODY OF GRACE REID/AKA GRACE PELZEL AND KELLY GRAFT**

87.     Plaintiffs reallege Paragraphs 1 through 86 as if fully set forth herein;

88.     At all times pertinent hereto, Plaintiffs Grace Reid AKA Grace Pelzel and Kelly Graft were, and are, the natural mother and father of L.S.G., a minor male child, born in 2007;

89.     In December 2015, L.S.G. was diagnosed with ADHD, and ODD. He was also diagnosed with DMDD in February 2017, and  his behavior became increasingly disruptive;

90.     By May 2017, L.S.G.'s behaviors had deteriorated to the point that the parents, despite seeking and providing services for him, sought assistance from AZDCS. Ms. Reid was informed by L.S.G.'s counselor that it was not safe for L.S.G. to be in the home with his two minor siblings, and that she should call the AZDCS "Hotline" and seek assistance. Ms. Reid did make the call and passed on to the call taker the information on the family situation and LSG's need to be separated from his siblings and provided with psychiatric and psychological evaluations and treatment;

91.     Defendant James Hanson, who was/is a "Child Safety Investigator" employed by AZDCS was assigned and a case was opened on L.S.G. in the agency;

92.     Through Hanson, a 90-day VSP was initiated in which L.S.G. would live apart from the family and would receive the requested evaluations and treatment;

93.     An ongoing case manager, Cheryl Ottley, was assigned to the family;

94.     During the VSP, there was an approximately 45-day delay before L.S.G. was evaluated and began to receive services, primarily through Arizona Children's Association [hereafter, "AZCA"];

95.     Late into the 90-day VSP, Ms. Reid was in contact with a behavioral therapist and psychiatrist through AZCA, who informed her that L.S.G. needed continuing services, but because of the AZDCS imposed 90-day limit, they could not provide those;

96.     Ms. Reid approached Ottley, and sought to have AZDCS formulate another 90-day VSP to extend the expiring one. Ottley informed Ms. Reid that the law prohibited AZDCS from doing so, and that if  the family required additional services, the agency would have to commence a dependency action against the parents. This information was wrong, as A.R.S. §8-806(c) provides for up to two (2) 90-day VSP's within a twenty-four (24) month period. Ms. Reid informed Ottley that she possessed an Occupational Therapist Assistant license, and the filing of a dependency petition could result in the impairment or loss of her livelihood - the listing of her and the father's names on the agency's statewide list of substantiated offenders would result in additional stigma and limitations on their liberty, and bar her from obtaining a fingerprint clearance card, which is required for her employment;

97.     Upon conclusion of the 90-day period, Ms. Reid worked with AZCA, whose staff came to her new home - which had a separate bedroom for L.S.G.- and installed devices to alert Ms. Reid if L.S.G. attempted to leave his room during the night, under AZDCS direction. Shortly after, Ottley closed the file on the family, despite

verbally acknowledging L.S.G.'s continued need for help/services. At this point, all

services for L.S.G. and the support services for the family ended;

98.    L.S.G.'s behaviors continued to deteriorate following the termination of

services, resulting in more AZDCS "hotline" reports and Marana Police Department

intervention;

99.    On the morning of March 12, 2018, LSG set fire to some papers and plastic

in his bedroom, after stealing a lighter from Ms. Reid;

100.    Fearful for L.S.G.'s siblings and her own safety, Ms. Reid called the

Marana Police Department. Officers were dispatched who removed L.S.G. from the

home and briefly placed him at the ACES Juvenile Facility at 2225 E. Ajo;

101.    Ms. Reid immediately contacted Defendant Hanson, advising him of the

danger L.S.G. presented, and asked for the same psychiatric and psychological services

and treatment, and that AZDCS locate a safe place for L.S.G. to reside;

102.    Hanson, in response, wrongly informed Ms. Reid that no 90-day VSP was

possible, and the only way the AZDCS would intervene was if a dependency petition was

filed and a case opened in juvenile court;

103.    Having no other recourse, Ms. Reid agreed to Hanson taking custody of

L.S.G.;

104.    On March 13, 2018 Hanson took custody of L.S.G., after delivering Ms.

Reid with a Temporary Custody Notice that the removal was based on "abandonment" ;

105.    Although Hanson had sufficient time to secure a court order for the removal

and AZDCS assumption of legal custody of L.S.G., he and his supervisor, Defendant

Josie Guzman, did not seek a court order, but made a removal based on purported "exigencies";

106.    On March 15, 2018, a Team Decision Making meeting [hereafter "TDM"] was held, attended by Defendant Valarie Brown as Facilitator; Hanson, Bustamante, the father and mother, and representatives from L.S.G.'s school and AZCA were also present. Defendants knew that a 90-day VSP was the desire of the parents, and knew that it was legally possible for such VSP to be formulated and commenced, but withheld that information from the parents. Defendants knew, at the time of the issuance of the Temporary Custody Notice, L.S.G. was not in imminent danger of physical or sexual abuse at the hands of either parent, and knew that the child had never been physically or sexually abused by either. The named Defendants, with Guzman's approval, decided to file a dependency petition, severing the Plaintiff's legal custody of L.S.G. and all parental rights;

107.    On March 15, 2018, upon information provided by the four AZDCS Defendants, the Arizona Attorney General filed the Dependency Petition that commenced Case No. JD20180144 against both parents. Plaintiffs were compelled to secure legal services in defense of the allegations made, and the case, as of the date of this pleading, continues;

108.    As a direct and proximate result of the actions taken by the Defendants, Plaintiffs have lost the parental rights over L.S.G., and have suffered violations of their First, Fourth, Fifth and Fourteenth Amendment right to familial association;

**IV.    FIRST CLAIM: CLAIM OF ALL PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANTS: UNCONSTITUTIONAL SEIZURES, VIOLATION OF RIGHT TO FAMILIAL ASSOCIATION AND DUE PROCESS**

109.    Plaintiffs reallege Paragraphs 1 through 108 as if fully set forth herein;

110.    This Claim is brought by the following Plaintiffs against the following individual Defendants:

A.    Plaintiffs Justin and Jacqueline Stein, and C.O.S., a minor, against DCS Defendants Mike Faust, Pauline Machiche, Alyssa Depke, Lyssa A. Fregoso, Valarie Brown, and Governor Doug Ducey;

B.    Plaintiffs Debra Greene, and K.C.G., a minor, against DCS Defendants Mike Faust, Pauline Machiche, Gerardo Fernandez, Amanda Downing, Christy Shay Hurd, Katelyn Galvin, Sarah Escamilla, and Governor Doug Ducey;

C.    Plaintiffs Grace Reid (aka Grace E. Pelzel), and Kelly Graft, against DCS Defendants Mike Faust, Pauline Machiche, Josie Guzman, Valarie Brown, James Hanson, Rebecca Bustamante, and Governor Doug Ducey;

111.    The removals of the minors, in the absence of court authorization, and in the absence of imminent danger to the removed child of physical or sexual abuse at the hands of the adult, violated all Plaintiffs' right to bodily integrity, privacy, familial association and substantive due process under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution;

112.    Those who directly participated in the unconstitutional removals were acting under policies and practices approved by the Defendants Faust and Machiche, such approvals constituting the moving force behind the removals;

113.    As a direct and proximate result, all Plaintiffs have suffered extreme emotional distress, humiliation, loss of self-esteem and loss of reputation. The parent-Plaintiffs have incurred expense. Plaintiffs will suffer injury and damage in the future as a result of the Defendants' violations;

### V.    SECOND CLAIM: CLAIM OF PLAINTIFFS JUSTIN STEIN, JACQUELINE STEIN AND C.O.S. AGAINST DEFENDANTS DEPKE, FREGOSO AND BROWN: JUDICIAL DECEPTION

114.    Plaintiffs reallege Paragraphs 1 through 113 as if fully set forth herein;

115.    In order to justify the unconstitutional seizure of the minor Plaintiff, C.O.S,. and to secure the commencement of juvenile dependency proceedings against the parent Plaintiffs, Defendants Depke, Fregoso and Brown engaged in fabrication and omission of materials facts as set forth above. Defendants succeeded in that the Attorney General, in reliance on the false information, filed and pursued the dependency action;

116.    The actions constituted violation of the Plaintiffs' due process rights under the Fifth and Fourteenth Amendments to the Constitution;

117.    As a direct and proximate result, Plaintiffs have suffered extreme emotional distress, humiliation, loss of self-esteem and loss of reputation. The parent-Plaintiffs have incurred expense. Plaintiffs will suffer injury and damage in the future as a result of the Defendants' violations;

### VI.    THIRD CLAIM: CLAIM OF PLAINTIFFS DEBRA GREENE AND K.C.G. AGAINST DEFENDANTS FERNANDEZ, DOWNING,  HURD AND GALVIN: JUDICIAL DECEPTION

118.    Plaintiffs reallege Paragraphs 1 through 117 as if fully set forth herein;

119.    In order to justify the unconstitutional seizure of the minor Plaintiff, K.C.G., and to secure the commencement of juvenile dependency proceedings against the parent Plaintiff,  Defendants engaged in fabrication and omission of material facts as set forth above. Defendants succeeded in that the Attorney General, in reliance on the false information, filed and pursued the dependency action;

120.    The actions constituted violation of the Plaintiffs' due process rights under the Fifth and Fourteenth Amendments to the Constitution;

121.    As a direct and proximate result, all Plaintiffs have suffered extreme emotional distress, humiliation, loss of self-esteem and loss of reputation. The parent-Plaintiff  has incurred expense. Plaintiffs will suffer injury and damage in the future as a result of the Defendants' violations;

## VII.    FOURTH CLAIM: CLAIM OF DEBRA GREENE AND K.C.G. AGAINST DEFENDANTS FERNANDEZ, DOWNING, HURD, ESCAMILLA: § 1983 CIVIL CONSPIRACY

122.    Plaintiffs reallege Paragraphs 1 through 121 as if fully set forth herein;

123.    On or about September 27, 2020, these named Defendants agreed that they would act in concert to cover up the unconstitutional nature of the removal of K.C.G.. Defendants thereafter undertook the specific actions identified herein, as well as other actions, including concealment of the true facts, in order to accomplish this goal;

124.    As a direct and proximate result, the Dependency Action was filed and prosecuted against Plaintiff Debra Greene, and her and K.C.G.'s right to familial association not restored until weeks later. Further, the Defendants actions prevented K.C.G. from receiving in a timely manner the urgent psychosexual and psychiatric

evaluations recommended by the independent professionals, resulting in delay and

disruption of K.C.G. receiving necessary services;

125.   Defendants' concerted actions violated Plaintiffs' right to liberty, bodily

integrity, privacy and due process under the Fourth, Fifth and Fourteenth Amendments;

126.   As a direct and proximate result, these Plaintiffs have suffered extreme

emotional distress, humiliation, loss of self-esteem and loss of reputation. The parent-

Plaintiff has incurred expense. Plaintiffs will suffer injury and damage in the future as a

result of the Defendants' violations;

## VIII.   FIFTH CLAIM: ALL PLAINTIFFS AGAINST DEFENDANT FAUST AND MACHICHE IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES: UNCONSTITUTIONAL REMOVALS

127.   Plaintiffs reallege Paragraphs 1 through 126 as if fully set forth herein;

128.   As of December 2016, when Defendant Faust commenced his tenure as

Deputy Director with AZDCS, he knew the right of parents to make decisions regarding

their children's welfare, including, but not limited to the right to house the child, make

decisions about health care, education and other aspects of life, as well as the child's right

to the comfort and support of the parent, was of Constitutional dimension;

129.   As of that date, such was the law throughout the Ninth Circuit Court of

Appeals, *see., e.g. Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000); and also, that

a child could not be taken from the parents' custody in the absence of a court order,

unless the state actor documented articulable facts supporting the conclusion that the

child was in imminent danger of physical or sexual abuse in the time it would take to

secure a warrant or court order of removal, *see, e.g., Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294-95 (9th Cir. 2007);

130.    The holdings of these cases, and others confirming this law, were known to Defendant. Defendant was involved in the agency's work on creation of what was executed on December 13, 2017, as Rule R-17-0046 of the Rules of Practice of Juvenile Courts, regarding an expedited process for AZDCS caseworkers to secure orders authorizing removal. This work was undertaken by the agency in recognition that its investigators were routinely violating the familial associational rights of families in emergency removals;

131.    As of the dates of the removals alleged herein, the practice of AZDCS personnel in removing children and severing the familial associational rights of parents and children in so doing was long established, and constituted a policy of the agency;

132.    At all times pertinent hereto Machiche was knowledgeable as to the constitutional limitations placed on the authority of AZDCS investigators and caseworkers to engage in emergency removals.

133.    Despite the agency's and Defendants' knowledge that AZDCS personnel were, and had been, routinely violating the Fourth Amendment bodily integrity and privacy rights, and the familial associational rights of families by removing in situations where the facts did not support the constitutional rule, and, particularly, in fact situations in which the parents sought temporary placement under A.R.S. §8-806, Defendants, up and through the period of removals set out herein, failed to formulate and disseminate

emergency and continuing training of field investigators that would have eliminated the unconstitutional practice;

134.   Further, in cases in which the parent sought assistance of AZDCS for temporary placement and emergency evaluations and treatment of a child, such as those set out herein, Defendants failed to allocate necessary resources for and formulate and disseminate emergency and continuing  training of field investigators so that those investigators would have the resources to meet the statutory obligations of the agency and not default to a removal on purported exigent circumstances;

135.   Defendants' acts and omissions constituted deliberate indifference to the constitutional rights of parents and children;

136.   Defendants' acts and omissions constituted the moving force behind the unconstitutional removals;

137.   As a direct and proximate result, the Plaintiffs suffered the injuries and losses alleged above;

138.   Plaintiffs remain in jeopardy of unconstitutional removals by AZDCS personnel under the established practices and policy set forth above;

**COMPLAINT FOR DECLARATORY JUDGMENT: CLAIM AGAINST FAUST AND DUCEY IN THEIR OFFICIAL CAPACITIES**

139.   Plaintiffs reallege Paragraphs 1 through 138 as if fully set forth herein;

140.   Defendant Doug Ducey is the Governor of the State of Arizona, and is sued in his official capacity as the signatory of the legislation, and ultimate law enforcement officer empowered to enforce the legislation, asserted herein to violate the Constitution of

the United States. This Claim is brought pursuant to 28 U.S.C. §2201, and Fed.R.Civ.P. 57;

141.    On July 1, 2018, legislation signed by Defendant Ducey came into effect as amendments to A.R.S. §8-821;

142.    Relevant to the judgment sought in this case, the statute reads as follows:

A.    A child shall be taken into temporary custody only pursuant to one of the following:…

2.    Subsection D of this section….

D.    A child may be taken into temporary custody without a court order by a peace officer, a child welfare investigator or a child safety worker if temporary custody is clearly necessary to protect the child because exigent circumstances exist.

K.    For the purposes of this section, "exigent circumstances" means there is probable cause to believe that the child is likely to suffer serious harm in the time it would take to obtain a court order for removal and either of the following is true:

1.    There is no less intrusive alternative to taking temporary custody of the child that would reasonably and sufficiently protect the child's health or safety.

2.    Probable cause exists to believe that the child is a victim of sexual abuse or abuse involving serious physical injury that can be diagnosed only by a physician who is licensed pursuant to title 32, chapter 13 or 17 or a health care provider who is licensed pursuant to title 32 and who has specific training in evaluations of child abuse.

143.    The statutory language is unconstitutional on its face, as its definition of "exigent circumstances" does not require the state actor to justify the existence of imminent risk of physical or sexual abuse in order to seize a child in the absence of a court order;

144.    Such authority sanctions removals that violate the First, Fourth and Fourteenth Amendment rights of the Plaintiffs and of all families in Arizona and the seizures addressed herein were authorized by the statute;

145.    In that the seizures in this case constituted part of a pattern of unconstitutional seizures officially sanctioned by the named Defendants, and through them, the State of Arizona, Plaintiffs remain at risk of further constitutional violations should the family circumstances require that the resort to requesting assistance under A.R.S. §8-806;

WHEREFORE, Plaintiffs demand judgment, jointly and severally, as follows:

1.    Awards of compensatory damages against each individual Defendant, in favor of the complaining Plaintiffs, in such amounts as the jury deems just;

2.    Awards of punitive damages against each individual Defendant, in favor of the complaining Plaintiffs, in such amounts as the jury deems just;

3.    Prospective equitable relief as follows:

    a.    An Order declaring the agency practice and policy of removals of children and filing of dependency petitions against parents who seek assistance under A.R.S. §8-806 to be in violation of Plaintiffs right to familial association under the First, Fourth, Fifth and Fourteenth Amendments;

    b.    An Order directing that Defendant Faust undertake an immediate review of agency practices and policies regarding agency compliance with obligations imposed by A.R.S. §8-806, and plan and execute a strategy to bring those practices and policies into compliance with the constitutional mandate;

c.      An Order appointing a Special Master to monitor and direct the remedial plan, and to report to this Court on a periodic basis the progress of the agency in complying with this Court's Orders;

d.      That this Court retain jurisdiction of this case until satisfied that the agency has fully complied, and that no further unconstitutional removals are likely to occur under the new training, policies and procedures put in place by the agency;

4.      An Order granting Plaintiffs their attorney fees and costs pursuant to 42 U.S.C. §1988;

5.      Interest;

6.      Such other equitable relief as the Court deems just;

7.      A Declaration that:

a.      the provisions of A.R.S. §8-821 identified herein are unconstitutional under the First, Fourth and Fourteenth Amendments to the Constitution of the United States;

b.      state actors authorized to make exigent removals, identified in the statute, are enjoined from making such removals in the absence of documenting specific, articulable facts supporting the conclusion that the child is in imminent danger of physical or sexual abuse in the time it would take the state actor to obtain a court order granting authority to remove;

c.      the Defendants formulate and submit to the Arizona General Assembly amendments to A.R.S. §8-821 that will bring the statute in compliance with the

constitutional limitations on the power of state actors to remove a child without first

obtaining a court order.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
4370 N. Via Entrada Hermosa
Tucson, Arizona 85718
Telephone: 888-318-0075
mike@mgmoorelaw.com


/s/ Joseph P. St. Louis
Joseph P. St. Louis (011728)
Nesci & St. Louis
216 N. Main Avenue
Tucson, AZ 85701
Telephone: 520-622-1222
joestlouis@azdefense.com

*Trial Counsel for Plaintiffs*


/s/ Mark E. Evans
Mark E. Evans (019067)
Evans Law PLLC
177 N Church Ave #200
Tucson, AZ 85701
Telephone: 520-618-6944
mark@evanslawtucson.com

*Of Counsel for Plaintiff Grace Reid*


## JURY DEMAND

Plaintiff demands trial by a jury of twelve (12) persons as to all issues.

/s/ Michael Garth Moore