**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Stein, et al., | No. CV-20-00102-TUC-JCH |
| Plaintiffs, | **ORDER** |
| v. | |
| Alyssa Depke, et al., | |
| Defendants. | |

Before the Court is Defendants' "Motion for Judgment as a Matter of Law." Doc. 215. Defendants' Motion tees up several issues that have been discussed in multiple hearings and through supplemental briefing. The Court will therefore use this opportunity to lay all these issues to rest.

**I.    Legal Standard**

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a). The standard for judgment as a matter of law under Rule 50(a) "mirrors" the summary judgment standard. *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)). Thus, the Court views the trial evidence in the light most favorable to the non-moving party, and "[i]f conflicting inferences may be drawn from the facts [presented at trial], the case must go to the jury." *Id.* (citing *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)).

To prevail on a judicial deception claim, a plaintiff must prove "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to [a] judicial decision." *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022).

## II.  Analysis

The parties are familiar with the facts and evidence. The Court previously granted in part Defendants' Motion to the extent it sought judicial notice of the PPH hearing transcript. *See* May 01, 2024, Minute Entry transcript.

### A. The PPH Report cannot form the basis for a judicial deception because Plaintiffs did not so identify it and because it was not material to the PPH Order.

Defendants seek judgment on Plaintiffs' punitive damages claim. Doc. 215 at 6. This claim requires resolution of a related issue previously raised in Defendants' Motion in Limine re: PPH Report. Doc. 152. The Court impliedly denied that motion in part because it found the PPH Report was relevant as to recklessness. *See* Doc. 198. The Court then denied all pending motions in limine as moot pending the disposition of Defendants' motion for judgment as a matter of law. *See* May 01, 2024, Minute Entry transcript. The Court now reaffirms those Orders and further precludes use of the PPH Report to the extent Plaintiffs seek to use that report for purposes other than to show recklessness.

The PPH Report's admission is limited as to recklessness only for two reasons. First, Plaintiffs did not identify it as a basis for a judicial deception material to the Preliminary Protective Hearing. Plaintiffs' second amended complaint incorrectly alleged that the PPH Report formed an evidentiary basis for the dependency petition, not the Preliminary Protective Hearing. Doc. 25 ¶¶ 52–53. Plaintiffs resisted summary judgment on their judicial deception claim by arguing that there "are fact issues as to whether Defendants knowingly or recklessly made false and material statements in the *dependency petition*," not the Preliminary Protective Hearing. Doc. 95 at 10 (emphasis added). In their joint proposed pretrial order, Plaintiffs discussed the PPH Report but did not argue that it was material to the PPH Order. Doc. 147 at 10–11. And Plaintiffs' Revised Proposed Jury

Instructions, emailed to the Court on April 28, propose a final damages instruction that reads:

> If you find for a plaintiff on the plaintiff's judicial deception claim, you must determine the plaintiff's damages which were caused by the Temporary Orders and Findings (Exhibit 36) entered by the Superior Court of the State of Arizona, on October 14, 2019.

In short, Plaintiffs' theory has never been that the PPH Report was a basis for judicial deception. They have gone so far as to move to preclude the PPH Order entirely. Doc. 197. And they have argued that the PPH Order was irrelevant to their claim because the PPH Order left the Temporary Orders intact, the PPH judge never considered legal custody, and, under Arizona rules of juvenile procedure, could not have. *See* Doc. 212. Instead, Plaintiffs have focused again and again on the Petition and the Temporary Orders. They have accordingly waived a theory of judicial deception arising out of the PPH Report.

Even if they had not, the PPH Report was not material to the Preliminary Protective Hearing as a matter of law. The record of the Preliminary Protective Hearing is limited to a little testimony at trial, the PPH Order (Doc. 153-3), the PPH Minute Entry (Doc. 152-1), and the hearing transcript, which was emailed to the Court and which the Court has judicially noticed and reviewed. *See* Tr. Ex. 145. At the Preliminary Protective Hearing, the judge clearly considered the PPH Report because it was identified and admitted, Doc. 152-1 at 2, and the juvenile court found "that based upon the [PPH] Report, the Department has made a *prima facie* case for continued temporary custody of [C.S.]." Doc. 152-1 at 3. But immediately after making that finding, the Court heard testimony from both parents, Alyssa Depke, and Ken Baumgartner. Both parties took the opportunity to cross-examine the witnesses called against them. And only after hearing testimony did the juvenile court rule that it could not find "probable cause to believe that continued temporary custody is clearly necessary." Doc. 152-1; *see also* Hr'g Tr. at 10:8–22, 132:5–19. In light of that record, no reasonable juror could find that "but for the [PPH Report], the challenged action would not have occurred." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). The fact that Plaintiffs have never challenged the PPH Order or argued that it could return legal custody to Plaintiffs reinforces the Court's judgment.

For those reasons, the Court will grant in part Defendants' motion to preclude the PPH Report for any purpose other than to show recklessness.

**B. Defendant Depke is dismissed because the evidence is insufficient to prove she made or was an integral participant in making misrepresentations that were material to a judicial decision.**

Defendants' motion as to Plaintiffs' punitive damages claim also requires the Court to determine whether each Defendant is liable for judicial deception. Liability for judicial deception extends only to those defendants who make or are integral participants in making "(1) a misrepresentation or omission (2) … deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *David*, 38 F.4th at 801.

At trial, testimony revealed that Depke went on vacation on October 10 and was not in the office on October 11, when Plaintiffs claim they asked for C.S. back and Fregoso signed off on the Dependency Petition. As a result, Depke could not *make* a misrepresentation material to a judicial decision because she made no representations at all on October 11.

Whether Depke was an "integral participant" in drafting the Dependency Petition is a somewhat closer question, but requires the same conclusion. A person may be an integral participant in a constitutional violation if they "participate in a meaningful way in a collective decision." Doc. 216 at 1 (citing *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018)). In *Keates*, the Court held that allegations were "just barely" sufficient to indicate integral participation where two CPS employees "were aware [of a child's] situation" and "collaborated in the issuance of the [Temporary Custody Notice]." *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018). The situation here is quite different. One of the key facts alleged to be a misrepresentation had nothing to do with Depke. Depke was not at the meeting where Plaintiffs asked for C.S. back, only Fregoso. And Depke was not in town on the day the Dependency Petition was filed, only Fregoso. Therefore, only Fregoso could have decided to omit that key alleged misrepresentation. But any other alleged misrepresentations in the Petition must also ultimately and only rest with Fregoso.

Even drawing all inferences for the Plaintiffs, no evidence produced at trial indicates

that Depke and Fregoso collaborated on the Petition. Instead, the evidence tends to show only that they collaborated *on the investigation*. Testimony revealed that Depke conducted an initial investigation with Fregoso's active help. But Fregoso then reviewed the results of this investigation, verified them, and signed a verification under oath to that effect attached to the Petition. Doc. 91-2 at 33. Depke should not be thereby liable for a judicial deception in the Petition any more than the numerous other DCS staff members involved in the collection of information Plaintiffs assert are misrepresentations. To decide otherwise would risk permitting the exception to immunity to swallow the rule.

Plaintiffs contend that Depke meaningfully participated in a judicial deception because she "worked with Ms. Fregoso throughout her investigation, seeking her input on key points[.]" Doc. 216 at 1–2. At oral argument, Plaintiffs also urged that testimony at trial tended to show that Depke told Fregoso what she believed were the facts of the case, and Fregoso agreed with her. But, again, that shows only that Depke and Fregoso collaborated on the investigation. There is no evidence tying Depke to the Petition itself. Plaintiffs also argue that Depke's statements in the PPH Report show she substantially agreed with the allegations in the Petition. Doc. 216 at 2. That may be true, but to speculate that she *would* have filed the Petition if she were there exceeds even the Court's obligation to draw all inferences for the nonmovant.

For those reasons, no reasonable juror could find that Depke is liable to Plaintiffs for judicial deception, and the Court will dismiss Depke from this case.

**C. Plaintiffs' damages, if any, continued after the October 17 PPH hearing because legal custody remained with DCS even when physical custody was returned to Plaintiffs.**

Defendants seek judgment as a matter of law as to "any constitutional deprivation … after October 17, 2019[.]" Doc. 215 at 6. They argue that the October 17 PPH Order was a superseding cause, cutting off any liability that may have been created by the October 14 Temporary Orders. *Id.* at 5–6 (citing *Suzuki v. Cnty. Of Contra Costa*, 820 F. App'x 577, 578 (9th Cir. 2020; *Dep't of Child Safety v. Stocking-Tate in & for Cnty. of Yuma*, 446 P.3d 813, 819 (Ariz. Ct. App. 2019)).

Defendants' liability after October 17 turns on the operation of Arizona law. That law is admittedly sparse with respect to these issues—but not too sparse. When a dependency petition is filed, "[t]he superior court … *may* issue an order authorizing [DCS] to take temporary custody of a child on finding that probable cause exists to believe that temporary custody is clearly necessary[.]" Ariz. Rev. Stat. § 8-821(B) (2018) (emphasis added); *see also* Ariz. R. Juv. Civ. P. 48(C) (Aug. 27, 2019). If the court does *not* enter that order, temporary custody ends. *See* Ariz. Rev. Stat. § 8-821(I) (2018) ("A child shall not remain in temporary custody for more than seventy-two hours excluding Saturdays, Sundays and holidays unless a dependency petition is filed."). If the court does enter Temporary Orders, it must also "hold a preliminary protective hearing … not fewer than five days nor more than seven days after the child is taken into custody[.]" Ariz. Rev. Stat. § 8-824(A) (2014). When both parents appear for a Preliminary Protective Hearing, that hearing is also an Initial Dependency Hearing ("IDH"). *See* Ariz. R. Juv. Civ. P. 52(B) (2017). The purpose of an IDH is (1) to "determine whether service has been completed," and (2) to determine "whether the parent … admits, denies or does not contest the allegations contained in the dependency petition." *Id.* Ariz. R. Juv. Civ. P. 52(A) (2017). Critically,

> If the parent … denies the allegations contained in the petition, the court *shall* set a settlement conference, pretrial conference or mediation and *continue the child as a temporary ward of the court pending adjudication*.

Ariz. R. Juv. Civ. P. 52(C)(6)(b) (2017) (emphasis added). Similarly, "[a]t the conclusion of the initial hearing the court *shall* … [a]ffirm prior orders making the child a temporary ward of the court." Ariz. R. Juv. Civ. P. 52(D)(6) (2017) (emphasis added). Thus, from the moment Temporary Orders are issued, children become "temporary wards of the Court, committed to the legal care, custody and control of ... [DCS]" even if they are subsequently "placed in the physical custody [of a parent]." *See Oscar F. v. Dep't of Child Safety*, 330 P.3d 1023, 1025 (Ariz. Ct. App. 2014) (first and second alterations in *Oscar F.*); *see also Tinsley v. Snyder*, 922 F.3d 957, 963 (9th Cir. 2019) (citing *Oscar F.* for this proposition).

Under these rules and caselaw, the judge at the PPH/IDH hearing in this case did

not have discretion to return legal custody to Plaintiffs. Defendants have presented no evidence to the contrary. The PPH Order and PPH Minute entry, for example, do not discuss legal custody. They also do not modify or refer to the Temporary Orders with respect to legal custody—the "legal care, custody and control of [DCS]"—or to specific instances of legal decision-making authority. Doc. 91-3 at 17–18 (authorizing DCS to consent to "social and authorized educational activities" and requiring DCS written approval before removing C.S. from Arizona or the United States). And a review of the Temporary Custody Hearing transcript (which forms the bulk of the PPH/IDH transcript) reveals that the parties were primarily concerned with *placement*, or physical custody, as opposed to legal custody. Finally, the PPH Order did record that both parents denied the allegations in the petition. Doc. 153-3 at 8. The Court thus presumes that triggered the juvenile court's obligation to "continue the child as a temporary ward of the court pending adjudication."

Defendants sole opposing case is distinguishable. *See* Doc. 215 at 6 (citing *Dep't of Child Safety v. Stocking-Tate in & for Cnty. of Yuma*, 446 P.3d 813, 819 (Ariz. Ct. App. 2019)). In *Stocking-Tate*, the Arizona Court of Appeal rejected a father's challenge to the Temporary Orders made after his participation in an Initial Dependency Hearing where he did not object to them. *See id.* at 816. The court reasoned that the father's challenge was untimely because "the original *ex parte* order authorizing temporary custody ceased to be of effect on November 1, 2018, when the juvenile court approved temporary custody based upon the allegations of the verified dependency petition." *Id.* at 819. Although *Stocking-Tate* has some apparently helpful language for Defendants, in context it never considered legal custody. The court was instead concerned with temporary *physical* custody; for example, the court reflected on Arizona's "continuous-review process" and concluded that this "[r]ecurring review of a child's *placement* ensures that the court's orders remain in his best interests[.]" *Id.* That is sufficient to read *Stocking-Tate* and *Oscar F.* consistently. *Stocking-Tate* discussed the role of subsequent review hearings for physical custody, while *Oscar F.* distinguished legal and physical custody and observed that legal custody remains with DCS even when physical custody returns to a parent. The Court is also not persuaded

that changes to the juvenile court rules suggest a change in their meaning. *See* Doc. 207 at 3 n.1. They could just as easily suggest a clarification of something long established.

Because the juvenile court lacked discretion to return legal custody to Plaintiffs at the PPH/IDH, and because Defendants have produced no evidence to the contrary, the Court will deny Defendants' motion for judgment as a matter of law with respect to damages after October 17, 2019.

**D. Defendants' motion for judgment as a matter of law is denied in all other respects.**

The Court will also deny Defendants' motion for judgment as a matter of law with respect to Fregoso's alleged misrepresentations, Doc. 215 at 3–4, Fregoso's alleged vindication through the PPH Order, *id.* at 4–5, and punitive damages as to Fregoso, *id.* at 6. Defendants' "Facts Established at Trial" require the Court to draw inferences against the nonmovant. The PPH Order does not ratify Fregoso's alleged actions or otherwise preclude Plaintiffs from arguing that the Petition was materially misleading as to the Temporary Orders. And a reasonable jury could return punitive damages, drawing all inferences for Plaintiffs. The Court will thus deny Defendants' motion in all respects other than as to Depke and the PPH Reports use as a basis for punitive damages.

**III. Order**

Accordingly,

**IT IS ORDERED GRANTING IN PART** Defendants' Motion (Doc. 215), consistent with this Order's reasoning and citations. In particular, Defendant Alyssa Depke is dismissed from this case with prejudice. The Clerk of the Court shall enter judgment as to Alyssa Depke accordingly.

**IT IS FURTHER ORDERED DENYING IN PART** Defendants' Motion (Doc. 215), consistent with this Order's reasoning and citations. This case shall proceed as to Defendant Fregoso.

Dated this 1st day of May, 2024.

_____
John C. Hinderaker
United States District Judge