**Rusing Lopez & Lizardi, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
mrusing@rllaz.com
pwaterkotte@rllaz.com
mdlammers@rllaz.com

Michael J. Rusing
State Bar No. 006617
Patricia V. Waterkotte
State Bar No. 02923
Mark D. Lammers
State Bar No. 010335

*Attorneys for Defendant Lyssa Fregoso*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Stein, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Alyssa Depke, et al., <br><br> Defendants. | NO. 4:20-cv-00102-JCH <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFFS' THIRD MOTION FOR ATTORNEYS' FEES AND EXPENSES** <br><br> (Assigned to Hon. John C. Hinderaker) |

Defendant Lyssa Fregoso ("Defendant") submits this response to Plaintiffs' Third Motion for Attorneys' Fees and Expenses (Doc. 342). Plaintiffs' filed their first motion for fees on July 15, 2024 and their second motion on September 17, 2024. Now, more than ***eight months*** after their second motion, and after the Court has already held oral argument on Plaintiffs' first two fee motions, Plaintiffs' attorneys file a third motion which includes fees going back to September 2024, without any explanation for their extreme delay in filing. Their third motion should be denied as untimely and this Court must put a stop to the endless "successive fee petitions" that Plaintiffs state they anticipate filing. *See* Doc. 268 at 2:15.

Curiously, Plaintiffs do not state in their Third Motion the total amount in fees they seek, which they did in the Second Motion. They merely state they are seeking an additional award totaling $78,104.21, which brings their total fees sought to $925,563.31,[1] plus prejudgment interest (they also did not specify in their Motion for Assessment of Prejudgment Interest the amount requested). Consistent with their previous two motions for attorney fees, Plaintiffs' counsel seek reimbursement for an unreasonable number of hours and at an unreasonable rate. In Plaintiffs' third round of briefing, they seek an additional $78,104.21 for the Ninth Circuit mediation in which Plaintiffs refused to come down or negotiate from their opening offer of $███████, working on their own fee motions, working on a meritless and untimely motion for prejudgment interest,[2] and deciding to accept the Court's remittitur. This is unreasonable in addition to being unreasonably delayed.

Defendant incorporates her arguments from her Responses to Plaintiffs' First and Second Motions for Attorneys' Fees (Docs. 315 and 317, respectively). And, as indicated in her Response to Plaintiffs' Second Motion for Attorneys' Fees (Doc. 317), Defendant supplements her previous responses to address the "results obtained" factor, given the massive remittitur that has since been accepted as a result of Defendant's motion.

**I.    The Results Obtained Reflect Minimal Success and the Court Should Reduce the Hours Accordingly.**

Following the Court's nearly 50% remittitur on COS's award, Plaintiffs' success was anything but "excellent" as they contend in the briefing on their first two fee motions.

---

[1] $736,756.00 (Doc. 268 at 1, First Motion for Attorneys' Fees) + $110,703.10 (Doc. 308 at 1, Second Motion for Attorneys' Fees) + $78,104.21 (Doc. 342 at 1, Third Motion for Attorneys' Fees) = $925,563.31.

[2] The Motion for Assessment of Prejudgment Interest was also inexplicably delayed by Plaintiffs. If Plaintiffs wanted to recover their attorneys' fees for preparing it, they easily could have filed that Motion prior to their First Motion or Second Motion, but they failed to do so.

2

1  Plaintiffs' minimal success compared to what they sought supports reducing the hours
2  allowed as part of the Court's lodestar calculation, as Defendant argued in her Response to
3  Plaintiffs' First Motion for Attorneys' Fees (Doc. 315). Specifically, the Court's remittitur
4  resulted in a **95% reduction** from $604,500 to a mere $30,000 for COS. Thus, the total
5  award was reduced by **nearly 50%** to $626,800. That is anything but excellent in a case in
6  which Plaintiffs' sought $▓▓▓▓▓▓▓ in settlement discussions before trial and over $14
7  million at trial, and in which their attorneys seek almost 1.5 times the ultimate award in
8  fees.

9  Plaintiffs testified this case was never about money, but was about changing the
10 system.[3] Yet, Plaintiffs achieved nothing to "change the system" and obtained nothing other
11 than a fraction of the money damages they requested. This is entirely distinguishable from
12 cases like *Sorenson v. Mink,* 239 F.3d 1143 (9th Cir. 2001), or *Ibrahim v. U.S. Dep't of*
13 *Homeland Sec.*, 912 F.3d 1147, 1178 (9th Cir. 2019), in which plaintiffs achieved policy
14 changes to the system.

15 In *Sorenson*, the plaintiffs sought only injunctive and declaratory relief (plus their
16 costs and fees) and the parties settled, with defendants agreeing to "'a series of conditions,'
17 which fell under six general headings: 'Enhanced Quality Assurance'; 'Additional
18 Disability Examiners Training And Observation'; 'Systemic Measures And Related
19 Actions'; 'Plaintiffs' Representation On The Advisory Council Of The Oregon DDS';
20 'Open Door Policy For DDS and SSA'; and 'Case Review To Ascertain Possible Systemic
21 Problems.'" Plaintiffs here obtained no similar relief. Defendant was not ordered to adhere
22 to a series of conditions or do anything other than pay money damages.

---

25 [3]Transcript of Trial Day 4 Afternoon (Doc. 222) at 7 (Jackie's redirect testimony: "I
don't even care about a lawsuit for money. I want the system to change so this doesn't
26 happen to anyone else.").

3

*Ibrahim* is even more distinguishable. There, the plaintiff sued the United States government over her placement on the No-Fly List and a variety of secretive government practices associated with the No-Fly List and the government's terrorist watchlist policies and practices. 912 F.3d at 1178. Specifically, Dr. Ibrahim's case was the first ever No-Fly List trial conducted and her success at trial forced the government to: correct its error in placing her on the list, admit for the first time ever that it had made an error with a terrorist watchlist, trace and correct its erroneous records in its various watchlists and databases, inform a watchlisted individual of her status, and admit for the first time that it had secret exceptions to the watchlisting reasonable suspicion standard. *Id.* Moreover, Dr. Ibrahim successfully litigated two appeals that resulted in substantial changes in the law, including establishing that district courts have jurisdiction over challenges to terrorist watchlist placements like the No-Fly List, and that "aliens who voluntarily depart from the U.S. have standing to bring constitutional claims when they have had a significant voluntary connection with the U.S." *Id.* The Ninth Circuit recognized all of these changes as working to establish "important principles of law, benefiting future individuals wrongfully placed on government watchlists," which was more than excellent—it was "extraordinary." *Id.*

Plaintiffs' results here are nothing like *Sorenson* or *Ibrahim* and to suggest otherwise is to diminish the remarkable successes of the plaintiffs in those cases, as they succeeded in their missions to change the system by forcing the government to change how it operates. Plaintiffs did no such thing here and they cannot seriously argue their results were excellent so as to justify the unreasonable number of hours they expended in litigating this case.

**II.     The Court Should Consider Settlement Negotiations**

A district court has the discretion to consider or not consider evidence of the amounts discussed in settlement and to give those amounts as much or as little weight as it sees fit. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 461 (9th Cir. 2013). However, in order to raise an

4

argument in connection with a fee application based on settlement negotiations, a party must provide admissible evidence about the negotiations to the court. *Vera v. FlexShopper*, LLC, 2022 WL 4472069, at *7 (N.D. Cal. 2022) (insufficient evidence of settlement negotiations where lawyer failed to provide a declaration on settlement negotiations). Here, Plaintiffs did not provide any declaration about settlement negotiations (despite preparing declarations on other issues). Therefore, they did not provide any evidence that would permit this Court to exercise its discretion in considering their partial recitation of settlement negotiations, which is misleading.

During the May 19, 2025 hearing, the Court indicated that it viewed settlement negotiations as relevant to determining Plaintiffs' success and requested that Defendant provide a brief summary of settlement negotiations. Accordingly, without waiving her objection that Plaintiffs did not provide any evidence that would permit the Court to consider such negotiations in support of their motions for fees, Defendant provides the following additional information which Plaintiffs failed to inform the Court about in their motions. *See* **Exhibit A**, Declaration of Mark Lammers.

Two years after service of the complaint and after COVID shutdowns and delays, in May 2022, the parties had an early settlement conference. The Steins demanded $▮▮▮▮▮. Fregoso's opening offer was $▮▮▮▮. In response, Mr. Moore instructed the Steins to leave and terminate the settlement conference. The State was prepared to engage in further negotiations that day and had more in authority, but did not have the chance because of Plaintiffs' abrupt termination of the conference.

In September 2023, at the trial-setting conference, Fregoso was willing to participate in a pre-trial settlement conference. However, Mr. Moore advised the Court the Steins were not interested, and he did not believe a settlement conference would help. (Doc. 114.) This was another lost opportunity to settle due to Plaintiffs' refusal to engage.

5

Later, counsel for Plaintiffs, Larry Wulkan, contacted undersigned to advise that the Steins would participate in mediation. The Ninth Circuit Mediation was set for January 31, 2024. Before the mediation, Plaintiffs advised their opening demand was $███████. The State was willing to settle for $███████. After several discussions through the Ninth Circuit mediator, Plaintiffs would not agree to come down from that demand or engage in any negotiations. Therefore, the in-person mediation was cancelled because Plaintiffs were not willing negotiate their number.

On March 14, 2024, Fregoso served an Offer of Judgment for $33,333 per Plaintiff. (Doc. 144.) Plaintiffs did not respond to it. That is, at the time for trial, Plaintiffs remained unwilling to negotiate down from their $███████ demand, thus leaving Defendant little choice but to go to trial.

No settlement negotiations took place during the trial. After trial, on July 17, 2024, the parties filed a joint motion to refer the case to the Ninth Circuit Mediation Program. (Doc. 270.) The in-person mediation was September 20, 2024. Defense counsel advised they had authority to settle the case, including attorney fees, for $███████, but Plaintiffs' counsel again would not come down from $███████ or negotiate at all. Following this mediation, during a call with Larry Wulkan, defense counsel again offered to settle all claims for $██████. Mr. Wulkan indicated that his clients would not accept less than $███████ and he was not sure if they would agree to $███████.

Finally, to the extent the Court decides to consider settlement negotiations without any admissible evidence produced by Plaintiff, the Court should consider that Plaintiffs' Disclosure Statement never identified a specific dollar figure and conceded Plaintiffs' damages were not subject to itemization, and that the parties were negotiating the claims set forth in Plaintiffs' Disclosure Statement. (Doc. 156-1 at 10.) ***Defendants*** prevailed on Claim 1 for unconstitutional removal. (Doc. 156-1). As to Claim 2 for judicial deception, Plaintiffs did

Rusing Lopez & Lizardi, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

not prevail on the misrepresentations alleged in their Disclosure Statement. The Disclosure Statement claimed the judicial deception occurred *through submission of facts* in the TDM Summary and Report to Juvenile Court. (Doc. 156-1 at 10.) Although the Court allowed Plaintiffs to proceed to trial over Defendants' objection on Plaintiffs' new list of omissions in the Pretrial Report (Doc. 148), no omissions were listed in Plaintiffs' Disclosure Statement, which is what informed settlement negotiations for the entirety of the litigation. In other words, the case at issue during settlement negotiations was not the same case that went to trial. And, the Court eventually ruled in Defendants' favor during trial that the Report to the Juvenile Court could *not* form the basis for any judicial deception claim, as Plaintiffs had claimed in their Disclosure Statement for the entirety of the litigation. (Doc. 226 at 2.) Because Plaintiffs did not identify any omissions at any time in their Disclosure Statement, which is what Plaintiff ultimately prevailed on at trial, they should not be able to use settlement negotiations against Defendants.

### III. Plaintiffs Should Not Be Rewarded for This Second Major Litigation Resulting From Their Three Motions for Attorneys' Fees.

"A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Yet, that is exactly the result of Plaintiffs' three motions. The Supreme Court directed in *Hensley* that "ideally," "litigants will settle the amount of a fee." *Id.* As explained above, Defendant attempted to do so in the September 2024 mediation in which Defendant had authority to settle the entire case for $▆▆▆▆▆. Unfortunately, Plaintiffs refused to negotiate or come down from their initial offer of $▆▆▆▆, so mediation was unsuccessful. Defendant again offered to settle the entire case for $▆▆▆▆ after the unsuccessful mediation and once more after the Court's order on remittitur. Plaintiffs never responded to those offers and instead filed their Third Motion for Attorneys' Fees, thus continuing the second major litigation that has resulted from the issue

7

of fees. The Court should deny Plaintiffs' Third Motion and not reward Plaintiffs for continuing to expand this litigation and the fees and costs incurred.

### IV. Plaintiffs' Counsel Spent An Unreasonable Number of Hours On Their Motions for Fees.

Plaintiffs seek reimbursement for approximately 76 hours spent researching and drafting their reply in support of their first and second motions for fees (66 hours for Zwillinger Wulkan and 9.9 for Mr. Moore). *See* Ex. B, green highlights. This is excessive and unreasonable for a 13.5-page reply. This is particularly excessive when their Reply states that *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895 (9th Cir. 1995), does not support the approach Defendant asserted, but Plaintiffs do not explain why they believe a case that quite literally endorses across-the-board percentage cuts to fees based on the ratio of successful-to-unsuccessful claims does not apply. One would expect that the 76 hours of research and drafting completed by three partners and an associate would result in some sort of explanation, rather than a bald assertion that the case simply does not apply. Similarly, Plaintiffs managed to spend 76 hours researching and drafting but could not address the fact that Plaintiffs only obtained partial or limited success relative to what they sought and how that impacts the excessiveness of the number of hours spent, as explained in *Dang v. Cross,* 422 F.3d 800 (9th Cir. 2005).

The 76 hours above were expended on a reply in support of two motions—it does not include the 46.8 hours sought in their first motion or the 3.6 hours sought for two September 17, 2024 entries by Mr. Wulkan for hours expended on the second motion. In other words, in total, Plaintiffs are now seeking 126.4 hours for work done in connection with the first two fee motions. That is unreasonable by any measure, especially considering the multiple deficiencies across the motions. The Court should reduce the number of hours sought in connection with the fee motions and end this second major litigation of fees.

8

### V. Plaintiffs' Counsel Spent An Unreasonable Number of Hours On the Motion for Prejudgment Interest.

Plaintiffs seek reimbursement for at least 29 hours spent researching and drafting their Motion for Assessment of Prejudgment Interest (Doc. 335). This is unreasonable for a four-page motion that does not bother to tell the Court what the law says about the considerations that govern the decision of whether to award prejudgment interest, what the law says about when prejudgment interest accrues on a damages claim that is not a sum certain, and, more strikingly, does not bother to tell the Court the interest rate that applies or how much Plaintiffs seek in interest. Plaintiffs' silence on these issues is curious given their multiple billed entries showing that Zwillinger Wulkan spent at least 9.4 hours researching prejudgment interest and at least 12.4 hours drafting and editing the motion, and Mr. Moore spent at least 7.4 hours working on the motion (it is impossible to tell from his entries how much time was spent on specific tasks, as his entries continue to be vague and block-billed in violation of LRCiv 54.2). *See* **Exhibit B**, purple highlights. Even more peculiar is their multiple entries showing that counsel performed calculations regarding prejudgment interest on May 1 and May 9, 2025, yet they inexplicably chose to leave them out. *See id.* Approximately 29 hours for a four-page motion that did not carry their burden of showing they are entitled to prejudgment interest, much less informing the Court of what that calculation should be, is excessive. The Court should, in its discretion, decline to award fees for the hours expended on that motion or, at a minimum, significantly reduce the hours.

### VI. The Court Should Deny Mr. Moore Any Time Spent Making "Additional Entries" and "Corrections" and Related to His Motion For Leave to Supplement the Record.

Mr. Moore billed 0.6 hours on May 13, 2025 for drafting his motion for leave to supplement the record on Plaintiffs' First Attorneys' Fee Motion and 2.1 hours on May 21, 2025 for "Review BG compilation of time, make additional entries, corrections." (Ex. B, blue highlights.) This is unreasonable because Mr. Moore never should have needed to file

9

such a motion or make such corrections if he had utilized a proper, reliable timekeeping method instead of reconstructing his time years after the fact by referring to his Outlook calendar. As explained in Defendant's Response to Mr. Moore's Motion for Leave to Supplement the Record (Doc. 348), it would be fundamentally unfair to require Defendant to pay for the time Mr. Moore spent correcting his own mistakes. The Court should exclude these entries entirely.

### VII. Plaintiffs' Entries Are Not Reliable and the Court Should Reduce the Number of Hours Accordingly.

The Court's Order requiring additional information about Mr. Moore's billing practices and Mr. Moore's subsequent response to that Order and Motion for Leave to Supplement the Record on Plaintiffs' First Motion for Attorneys' Fees demonstrates the unreliability of Mr. Moore's entries. Indeed, he admitted that his method of timekeeping consists of looking at his Outlook calendar to see what work he did on a particular day and then using that information to reconstruct his time in preparation of a billing statement. As demonstrated by his own filings, Mr. Moore's method is patently unreliable and results in errors.

As another example of Plaintiffs' unreliable entries, Mr. Moore now seeks to be awarded for the following vague and improperly block-billed entries.

- 9/12/2024: "Email BG" (.1). Mr. Moore does not explain who "BG" is or provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A) (communication entry "must identify all participants and the reason" for the communication). Further, Mr. Moore does not explain why this entry was not included in the Plaintiffs' second fee motion, which was filed on September 17, 2024.

- 1/27/25: "Email LW" (.1). Mr. Moore again fails to provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A).

10

- 3/22/2025: "Email Courtroom Deputy" (.2). Mr. Moore again fails to provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A). Contextually, undersigned can infer this was related to the Court's order regarding the return of exhibits, but this is in contrast to the other entries for which undersigned cannot make such inferences.
- 3/23/2025: "Email J. Stein" (.1). Mr. Moore again fails to provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A).
- 4/30/2025: "T/C KBaumgartner, review trial testimony and CS damages, report LW/JHS; exchange JHS re: remittitur" (.7). Mr. Moore again fails to provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A). Moreover, it is unclear why Mr. Moore would need to speak to a trial witness so long after trial. This entry is also block-billed such that it is impossible to tell how much time was spent on which specific task.
- 5/12/2025: "Email exchanges LW" (.3). Mr. Moore again fails to provide an adequate description of the services rendered as required by LRCiv 54.2(e)(2)(A).

Ex. B, yellow highlights.

Given the many errors contained in Mr. Moore's time entries, which he himself admits to, the Court should apply an across-the-board hours reduction to Mr. Moore's hours.

### VIII. Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' third motion for fees as unreasonably delayed and should end what has turned into a second major litigation of this case. As to the two previous fee motions, the Court should significantly reduce the fees Plaintiffs seek in light of the massive remittitur resulting in minimal success, counsel

11

having spent an unreasonable number of hours relative to the results obtained, and counsel's entries being unreliable.

DATED this 10th day of June 2025.

RUSING LOPEZ & LIZARDI, P.L.L.C.

*/s/ Patricia V. Waterkotte*
Michael J. Rusing
Patricia V. Waterkotte
Mark D. Lammers
*Attorneys for Defendant Lyssa Fregoso*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 10th day of June, 2025 via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to the following CM/ECF registrants:

Michael Garth Moore
9040 North Placita Verde
Tucson, Arizona 85704
mike@mgmoorelaw.com

Larry J. Wulkan (021404)
Jennifer L. Allen (027941)
Alexis J. Eisa (021404)
ZWILLINGER WULKAN PLC
2020 N. Central Ave. Suite 675
Phoenix, Arizona 85004
Tel: 602-962-0089
larry.wulkan@zwfirm.com
jennifer.allen@zwfirm.com
alexis.eisa@zwfirm.com
*Trial Counsel for Plaintiffs*

By   */s/ Aneta Wrzeszcz*
Def Response to PL's Third Motion for Fees(63658291.2)