Michael Garth Moore (023742)
6336 N. Oracle Rd. Suite 326 #119
Tucson, Arizona 85704
Tel: 520-318-0075
mike@mgmoorelaw.com

Larry J. Wulkan (021404)
Jennifer L. Allen (027941)
**ZWILLINGER WULKAN PLC**
2020 N. Central Ave. Suite 675
Phoenix, Arizona 85004
Tel: 602-962-0089
larry.wulkan@zwfirm.com
jennifer.allen@zwfirm.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Stein, et al.,<br><br>                  Plaintiffs,<br><br>v.<br><br>Alyssa Depke, et al.,<br><br>                  Defendants. | Case No.: 4:20-cv-00102-JCH<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' THIRD MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

In response to Plaintiffs' third motion for fees and expenses (which was half a page long), and notwithstanding this Court's comments that it is not seeking "a lot of briefing" on the issue, *see* Tr. of May 19, 2025 Proceedings at 5, the defendant filed 12 pages of briefing just in response to the motion (Doc. 349) and an additional four pages of briefing in response to Mr. Moore's motion (Doc. 248) to simply supplement the record because of a clerical error. When one considers that in the context of the 26 page motion for a new trial (Doc. 295) and 24 page reply (Doc. 318), as well as the 20 page renewed motion for

judgment as a matter of law (Doc. 279) and 19 page reply in support of the same (Doc. 320), one need not wonder why the fees are in this case have risen to what they are.[1]

Defendant argues the third motion is "untimely" and "successive." But the Court specifically authorized a final motion for fees after the May 19 hearing and set a May 27, 2025 deadline for all supplemental materials. *See* Tr. at 6:1–7. The notion that Plaintiffs are engaged in "serial" fee litigation distorts the record and the law. The Ninth Circuit, "like every other court that has considered the question," has "held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable." *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986)(overruled on other grounds).

Defendant's repeated assertion that Plaintiffs achieved "minimal success" is legally and factually incorrect. Doc. 349 at 2:18. Plaintiffs obtained a $1.2 million dollar verdict, including punitive damages. That the award was reduced via a remittitur does not render the result insignificant. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee, even if he failed to prevail on every contention. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The standard is not whether Plaintiffs changed the law or government policy, it is whether they vindicated important constitutional rights and obtained relief. They did both.

Defendant continues to raise hyper-technical objections to individual entries while ignoring that: Mr. Moore provided a supplemental declaration and documentation that explains his timekeeping and omitted hours; the Court asked for that supplementation; and Plaintiffs' reply brief involved collaborative work among three attorneys, with detailed, non-duplicative entries. Defendant criticizes Mr. Moore for constructing a single

---

[1] Defendants' bloated filing that repeats, virtually word for word in many cases, arguments already raised in their responses to the first and second fee motions and other arguments already rejected by the Court in the context of post-verdict filings. This includes renewed attacks on Plaintiffs' success, hourly rates, billing entries, and even Mr. Moore's calendar-based timekeeping, which were already discussed extensively in both filings and at the May 19 hearing.

time (or billing) statement from contemporaneously kept calendar records, yet fails to identify any authority barring such a method. Plaintiffs' records are detailed, supported by sworn declarations. The argument that time spent correcting or supplementing time entries is per se non-compensable is legally incorrect. Mr. Moore's supplemental work was ordered by the Court and conducted in good faith. It is reasonable to request fees for that effort.

Yet again, Defendant attacks the time entries as vague, duplicative, or block-billed. But the entries submitted in support of the third motion (Doc. 342-1) are detailed, line-by-line descriptions covering the preparation of Plaintiffs' reply briefs and the Court-requested supplementation of the fee record, as well as a motion for prejudgment interest. This work spanned multiple attorneys and included case law research, strategy meetings, drafting, editing, and coordination, all of which were necessary.

The State points to words like "conference" or "review" as vague, even when the entries specify whom counsel spoke with, what was reviewed, and for what purpose. Courts have consistently rejected the kind of nitpicking Defendant engages in here. The Supreme Court made clear, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). In reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

One point on which Plaintiffs and the State agree is that the court should consider settlement negotiations! Here is the bottom line. Prior to trial, Defendant's top offer was, in the form of an offer of judgment, $100,000, a fact absolutely ignored in Defendant's response.[2] The jury returned a verdict twelve times that amount. Defendant then rehashes

---

[2] Defendant suggests that the State "was willing" willing to offer a *slightly* higher amount prior to trial, but it never even did that! *See* Doc. 351 (under seal) at 6:4. Plaintiff does

the incredible argument that Plaintiffs did not achieve an excellent result at trial, going so far as saying "the Court's remittitur resulted in a 95% reduction" for C.S. so the "total award was reduced by nearly 50%." Doc. 349 at 3:1-5. Suggesting that a higher verdict reduced by a remittitur means Plaintiffs were less successful than if they had sought or won a lower award is the pinnacle of absurd reasoning.

As the State points out, the Steins would have settled this matter for $400,000 in May of 2022. In hindsight, that seems spectacularly reasonable considering its about $233,000 less than the remitted verdict *before* fees are assessed. During those negotiations, the State's offer was so ridiculously low (as shown in its filings placed under seal) that negotiations fell apart. The State's top dollar was not even a third of the remitted verdict *before* the assessment of fees. It is difficult to imagine the argument Defendant makes--that Plaintiffs did not achieve an excellent result.

Defendant then says "during a call with Larry Wulkan, defense counsel again offered to settle all claims for $1 million. Mr. Wulkan indicated that his clients would not accept less than $1.5 million and he was not sure if they would agree to $1.5 million." Doc. 349 at 6. That discussion was not, in any way, privileged as it was outside of the Ninth Circuit's mediation program and, therefore, Plaintiffs have made no attempt to hide it. As the undersigned argued at the May 19 hearing: "When you look at what the jury awarded and what the attorney's fees would be presumptively, we would have been over that amount. We will -- I'm not trying to presuppose what the Court is going to do, we are not going to be far from that number, is my suspicion." Tr. At 27:16-20.

This was a contingency fee case. As the Ninth Circuit put it best: "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where

---

not call out the precise hypothetical offer out of respect for the fact that the Court has not ruled on whether that document should remain under seal.

plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The Court should follow the Supreme Court's guidance and "not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox, supra*. That means awarding Plaintiffs every penny they are seeking.[3]

RESPECTFULLY SUBMITTED this 23rd day of June, 2025.

*/s/ Larry J. Wulkan*
Larry J. Wulkan
Jennifer L. Allen
2020 N. Central Ave., Suite 675
Phoenix, Arizona 85004
Telephone: 602-609-3800
larry.wulkan@zwfirm.com
jennifer.allen@zwfirm.com

Michael Garth Moore
6336 North Oracle Road Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-318-0075
mike@mgmoorelaw.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on June 23, 2025. Notice of this filing will be sent to all parties

---

[3] Once again, using billing discretion, Plaintiffs have not sought *any* fees for drafting this reply, or the work on the reply in connection with their motion for prejudgment interest. Should the State continue to pursue its prematurely filed appeal, let there be no doubt that we will be seeking those fees before the Ninth Circuit. The State's fee exposure is squarely governed by its own actions.

and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

*/s/ Stephanie Dolfini*