**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Stein, et al., | No. CV-20-00102-TUC-JCH |
| Plaintiffs, | **ORDER** |
| v. | |
| Alyssa Depke, et al., | |
| Defendants. | |

Before the Court are Plaintiffs' First Motion for Attorneys' Fees and Expenses ("First Fee Motion") (Doc. 268); Motion for Leave to Supplement the Record on Plaintiffs' First Motion for Attorney Fees and Expenses[1] ("Motion to Supplement the Record") (Doc. 336); Second Motion for Attorneys' Fees and Expenses ("Second Fee Motion") (Doc. 308); and Third Motion for Attorneys' Fees and Expenses ("Third Fee Motion") (collectively, the "Fee Motions"). Together, the Fee Motions request attorneys' fees and related expenses totaling $983,227.16. After reductions, the Court will award Plaintiffs $742,161.66 total for fees and costs requested in the three applications.

Plaintiffs also have a pending Motion for Assessment of Prejudgment Interest (Doc. 335). For reasons explained below, the Court will grant $34,531.38 in prejudgment interest on the compensatory damages awarded ($526,800), calculated at 1.63% and compounded annually for the period from September 9, 2020, through August 12, 2024.

---

[1] The Court will deny this motion (Doc. 336). Counsel fails to demonstrate good cause or excusable neglect for not timely including the entries within the First Fee Motion. Further, the Court finds counsel's request for an additional 10.3 hours to prepare the supplement unreasonable under the circumstances.

## I.      BACKGROUND

By order dated September 14, 2023 (Doc. 112), the Court denied Defendant's Motion for Summary Judgement. This order left two claims for trial: 1) judicial deception; and 2) unconstitutional removal. Defendant pursued an interlocutory appeal to challenge the Court's order denying summary judgment on the unconstitutional removal claim. In turn, Plaintiffs moved to voluntarily dismiss that claim. The Court of Appeals remanded the case, the Court dismissed the unconstitutional removal claim with prejudice, and the case went to trial on the Steins' judicial deception claim only.

After the evidence was in, the Court granted Defendant Depke's Rule 50(a) motion and dismissed the judicial deception claim against her, leaving only the judicial deception claim against Defendant Fregoso for the jury. The jury returned a verdict against Fregoso (Doc. 244), awarding Jacqueline (Jackie) Stein $184,800 in compensatory damages and $33,333 in punitive damages; Justin Stein $312,000 in compensatory damages and $33,333 in punitive damages; and the Steins' minor child, C.S., $604,500 in compensatory damages and $33,334 in punitive damages. *Id.*

Following the verdict, Defendant filed post-trial motions. Before deciding those motions, the Court granted a stipulation to stay the case so the parties could participate in a settlement conference. The parties did not settle, and the Court turned back to resolving post-trial motions. Eventually, the Court denied Defendant's Renewed and Supplemental Motion for Judgment as a Matter of Law (Doc. 329) and denied in part and granted in part Defendant's Motion for New Trial or, Alternative, for Remittitur (Doc. 330). In so doing, the Court granted Defendant's request for a remittitur and reduced the jury's compensatory damages award to C.S. from $604,500 to $30,000. Doc. 330 at 21–24. The Steins accepted the remitter to $30,000. Doc. 333. Post-remittitur, the combined award to all three Plaintiffs is $526,800 in compensatory damages and $100,000 in punitive damages.

On May 19, 2025, the Court held a hearing on the Fee Motions. The Court heard oral argument and addressed Plaintiffs' additional filings. The Court took the Fee Motions under advisement and requested one final round of supplemental briefing—now complete.

## II.    PLAINTIFFS ARE ELIGIBLE FOR AN ATTORNEY'S FEE AWARD

"Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983). Civil rights actions include those brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (citing H.R. Rep. No. 94-1558, p. 1 (1976)). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433 (quotation marks and citation omitted). "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113.

Here, Plaintiffs obtained a favorable jury verdict against Defendant Fregoso. As the prevailing party, Plaintiffs are eligible for a fee award.

## III.    LEGAL STANDARD

A "court's 'central' responsibility [is] to 'make the assessment of what [] a reasonable fee [is] under the circumstances of the case.'" *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quoting *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). After analyzing the circumstances, a court may award a full fee, a reduced fee, or no fee at all. *Id.* Indeed, the Supreme Court has admonished "that fee awards under § 1988 were never intended to produce windfalls to attorneys." *Id.* (quotations and citations omitted). "A prevailing plaintiff[, however,] 'should ordinarily recover an attorney's fee unless circumstances would render such an award unjust.'" *Hensley*, 461 U.S. at 429 (citations omitted). "The amount of the fee, of course, must be determined on the facts of each case." *Id.* The Ninth Circuit instructs "[i]n applying the 'special circumstances' exception, we focus on two factors: (1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." *Thomas v.*

1    *City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) (quotations and citations omitted).

2        With these instructions in mind, the "starting point for determining the amount of a
3    reasonable fee is the number of hours reasonably expended on the litigation multiplied by
4    a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is the first step in the Ninth
5    Circuit's two-step "lodestar method." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir.
6    2024) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)). A
7    "reasonable hourly rate" is one "based on evidence of the market rate for the services
8    provided." *Id*. The number of hours reasonably expended "is calculated by considering
9    whether, in light of the circumstances, the time could reasonably have been billed to a
10   private client." *Moreno v. City of Sacramento*, 524 F.3d 1106, 1111 (9th Cir. 2008). The
11   resulting lodestar amount is treated as a presumptively reasonable award.  *Edmo*, 97 F.4th
12   at 1168.

13       In step two, courts may adjust the fee award upward or downward after
14   consideration of the *Kerr* factors.[2] *Moreno*, 524 F.3d at 1111.

15   **IV.    THE AWARD**

16       **a.  The Hourly Rates**

17       "Generally, when determining a reasonable hourly rate, the relevant community is
18   the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973,
19   979 (9th Cir. 2008) (citations omitted). The relevant community, then, is Arizona.  *See*
20   *Ramos v. Probuilds, LLC*, No. CV-23-01111-PHX-SMM (DMF), 2024 WL 1078078, at *6
21   (D. Ariz. Feb. 26, 2024), *report and recommendation adopted by* No. CV-23-01111-PHX-
22   SMM, 2024 WL 1071204 (D. Ariz. Mar. 12, 2024).

---

23   [2] The *Kerr* factors are:
24           (1) the time and labor required, (2) the novelty and difficulty of the questions
         involved, (3) the skill requisite to perform the legal service properly, (4) the
25       preclusion of other employment by the attorney due to acceptance of the case,
         (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
26       limitations imposed by the client or the circumstances, (8) the amount
         involved and the results obtained, (9) the experience, reputation, and ability
27       of the attorneys, (10) the 'undesirability' of the case, (11) the nature and
         length of the professional relationship with the client, and (12) awards in
28       similar cases.
     *Edmo*, 97 F.4th at 1168 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.
     1975)).

The Court has reviewed each timekeeper's qualifications, and the supporting declarations, including the declarations made by the parties' expert witnesses: Attorney Randy Papetti for Plaintiffs (Doc. 268-4) and Attorney Andrew J. Peterson for Defendant (Doc. 315-4). Both attorney experts are known to and respected by the Court. Their opinions are not far apart. Mr. Peterson opines that a "customary rate" for a plaintiff's attorney in Pima County is $350 to $450 an hour. This range is consistent with awards made in the District of Arizona in similar cases. *See* Order Re: Attorneys' Fees and Costs, *Williams v. Campas*, No. 4:17-cv-029-EJM, Doc. 359 at 9–10 (D. Ariz. Sept. 13, 2024) (collecting cases). The Court agrees the range proposed by Mr. Peterson is "reasonable." Mr. Peterson challenges the requested hourly rates for Mr. Moore ($635) and Mr. Wulkan ($450) and opines instead that $400 is a reasonable hourly rate for both attorneys.

Mr. Papetti does not offer a range, but he does opine that $450 an hour is "below market for a lawyer of [Mr. Wulkan's] experience and expertise." Doc. 268-4 at 4. Based upon Mr. Wulkan's qualifications, experience and abilities, his hourly rate belongs at the top of the range proposed by Mr. Peterson. The Court finds the rate proposed by Mr. Wulkan—$450—is a reasonable hourly rate for him.

Mr. Moore's proposed hourly rate—$630—is too high. Mr. Moore has more years of experience than Mr. Wulkan, but ultimately both attorneys have decades of experience. On balance, Mr. Moore's qualifications, experience, and abilities are comparable to Mr. Wulkan's. Accordingly, the Court finds $450 is also a reasonable hourly rate for Mr. Moore. This is also at the top of the range proposed by Mr. Peterson.

Defendant and Mr. Peterson do not question the hourly rates proposed for the more junior timekeepers on Plaintiffs' litigation team. The Court has carefully considered each timekeepers' qualifications and experience. The Court finds the hourly rates proposed are reasonable.[3] The Court will use the following hourly rates to calculate the lodestar amount for the Fee Motions:

---

[3] Plaintiffs' Third Fee Motion includes increased hourly rates beginning on January 1, 2025. Doc.342-1 at 4. The Court will not allow these increases for reasons given below on page 15.

| | | | | |
|---|---|---|---|---|
| Michael Moore | $450 | | Brittany T. | $195 |
| Larry Wulkan | $450 | | Stephanie Dolfini | $175 |
| Peter Kozinets | $450 | | Tricia Jochum | $175 |
| Peter Silverman | $395 | | Amber Pierides | $175 |
| Jennifer Allen | $375 | | Alyssa Ogletree | $175 |
| Robert Weeks | $350 | | Gabriella Curatola | $125 |
| Alexis Eisa | $245 | | Emma Smith | $125 |
| Jacqueline Iafrate | $245 | | Colleen Price | $125 |
| Anne Slawson | $215 | | | |

**b.  The Number of Hours Expended**

Next, the Court considers whether the hours claimed by Plaintiffs' trial team were reasonable. It is Plaintiffs' burden to "submit evidence supporting the hours worked and rates claimed[,] [and] [w]here the documentation of hours is inadequate the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111. "In the private sector, 'billing judgment' is an important component in fee setting[,] [i]t is no less important here." *Hensley*, 461 U.S. at 434.

To meet its burden, Plaintiffs have provided declarations from both Mr. Wulkan (Doc. 268-1) and Mr. Moore (Doc. 268-2 and Doc. 334-1). Attached to the declarations are itemizations that purport to reflect billing entries made by the various timekeepers. The Court has carefully reviewed the declarations and the time entries. Defendant raises several challenges to those entries.

> **i.  The Unconstitutional Removal Claim is a Related Claim and Plaintiffs' Counsel Achieved an "Excellent Result."**

Before addressing the specific time entries in the Fee Motions, the Court will address two issues that are common to all three Fee Motions. The Response to the First Fee

Motion objects that Plaintiffs seek attorney's fees for time spent on "unrelated claims" and asserts Plaintiffs did not obtain an "excellent result." Doc. 315 at 4–7, 17–18.

Defendant correctly notes this case "began with seven plaintiffs from three families and five claims for unconstitutional removal and judicial deception, as well as a claim seeking a declaration that an Arizona statue is unconstitutional." *Id.* at 4. The case narrowed over time as various claims and parties were dismissed from the action. Ultimately, Plaintiffs prevailed at trial on only one claim—judicial deception—against one defendant.

If the prevailing party achieves "excellent results," the Court may award full fees. *Hensley*, 461 U.S. at 435; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 905–06 (9th Cir. 1995). But where the result achieved does not warrant a full recovery, the Court may apply a downward adjustment to the lodestar by "award[ing] only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Id.* "The time, to be compensated in an award, must be reasonable in relation to the success achieved. It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee award." *McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994) (quotation marks omitted) (citing *Hensley*, 461 U.S. at 436; *Farrar*, 506 U.S. at 114).

To determine attorneys' fees in cases of partial success, like this one, "[a] court must consider (1) whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded,' and (2) whether 'the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (quoting *Hensley*, 461 U.S. at 434). "[C]laims are unrelated if the successful and unsuccessful claims are 'distinctly different' both legally and factually," *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (quoting *Schwarz*, 73 F.3d at 902–03); and the claims are related if they "involve a common core of facts or are based on related legal theories," *id.* at 1168. "[T]he

focus is on whether the unsuccessful and successful claims arose out of the same course of conduct." *Id.* at 1169. If not, hours expended on unsuccessful claims should not be included. *Id.*; *Schwarz*, 73 F.3d at 901.

There were some clearly "unrelated claims" asserted in the Complaint, FAC, and SAC. This includes all claims brought by plaintiffs other than the Steins, and any claims besides the judicial deception and unconstitutional removal claims. Plaintiffs concede this point and address the issue by exercising "billing judgment" to "excise" any hours billed on these unrelated claims. Docs. 268 at 8–9 and 268-2 at 3. The Court requested supplemental briefing from Mr. Moore and held a hearing to evaluate the process he used to do this. Docs. 332; 337; and 346 at 10:4–12:11. Mr. Moore explained how he kept his time and prepared his fee request. Doc. 334. The Court has also carefully considered the time billed by Mr. Moore relative to the work performed at a micro- and macro-level to gauge reasonableness. In the following section of this Order, the Court does reduce Mr. Moore's time where it seems unreasonable. On balance, the Court is satisfied that Mr. Moore took appropriate measures to "excise" time spent on those claims that Plaintiffs concede are "unrelated claims."

Plaintiffs have included in the Fee Motions time billed in relation to the unconstitutional removal claim, which the Court dismissed shortly before trial. Defendant argues that Plaintiffs' unsuccessful unconstitutional removal claim is also an "unrelated claim." The Court disagrees and finds the unconstitutional removal claim related to the judicial deception claim. Both claims arise from the same common core of facts and, to a meaningful degree, out of the same course of conduct. More specifically, both claims arose primarily out of events that occurred between the time the Steins called DCS on October 9, 2019, and the date the juvenile court returned physical custody of C.S. to the Steins on October 17, 2019. While the legal theories are distinct, to fully develop the judicial deception claim Plaintiffs had to conduct discovery about the DCS investigation, the removal itself, and what occurred between the removal and the filing of the dependency petition. Indeed, significant evidence Plaintiffs developed through discovery regarding the

unconstitutional removal claim was admitted at trial. Because the facts giving rise to the unconstitutional removal claim were also core to the judicial deception claim, the Court finds the two claims related. *See Webb*, 330 F.3d at 1169; *Schwartz*, 73 F.3d at 902–03.

Turning to step two, the Court "evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Schwarz*, 73 F.3d at 902–03 (internal quotation marks and citations omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. A plaintiff does not need to receive all requested relief to show an excellent result. *Id.* at 435 n.11; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

The Court finds Plaintiffs' Counsel achieved an "excellent result." The Court reached this conclusion for several reasons. First, most of the fees requested were incurred when the only claim remaining was for judicial deception.

Second, this litigation was hard fought. Defendant had at least three attorneys working on the case, all of whom were present throughout trial. Defendant routinely asked for and was granted leave to exceed the Court's presumptive page limits. Defendant filed a thorough and lengthy motion to reconsider the Court's order denying summary judgment. Although Defendant did not put forth any specious arguments, some arguments were weak, and, more often than not, Plaintiffs prevailed during motion practice. At times, Defendant also revisited issues the Court had already decided. Defendant had every right to litigate in this fashion, but this undoubtedly drove up attorney's fees on both sides. The Court has considered the onslaught Plaintiffs overcame to achieve a favorable outcome in gauging the degree of Plaintiffs' success.

Third, the Court finds unpersuasive Defendant's argument that Plaintiffs' success should be measured against the huge sum Plaintiffs' counsel asked the jury to award during closing argument. The Court doubts Plaintiffs' counsel expected the jury to award anything

close to what he requested during his closing argument. Rather, Plaintiffs' counsel appeared to be "boarding" a very high damages figure to "anchor" the jury high. Anchoring high is a common strategy supported by academic research. *E.g.*, Gretchen B. Chapman & Brian H. Bornstein, *The More You Ask for, the More You Get: Anchoring in Personal Injury Verdicts*, 10 APPLIED COGNITIVE PSYCH. 519 (1996). And that approach appears to have been somewhat successful here.

A better yard stick against which to measure Plaintiffs' success is the parties' pretrial settlement negotiations.[4] From the briefing the Court understands that the following pretrial settlement negotiations occurred:

- In April 2020, the Steins offered to settle for $300,000. Defendant rejected the offer and did not counter.

- In December 2021, the Steins offered to settle for $400,000. Defendant rejected the offer and did not counter.

- At a settlement conference in May of 2022, the Steins offered to settle for $400,000. Defendant rejected the offer and countered at $20,000. The Steins walked out of the settlement conference and did not counter.

- At a settlement conference in January of 2024, Plaintiffs offered to settle for $1.75 million. Defendant rejected the offer and countered at $175,000. The Steins rejected the offer, and no further offers were made. The Court assumes both parties would have moved further towards the middle, but the mediator determined there was no point because the parties were too far apart to reach a settlement.

- In March 2024, Defendant made an offer of judgment for $100,000 total, which Plaintiffs did not accept.

---

[4] Defendant objects to the Court considering settlement negotiations without Plaintiffs' counsel submitting a declaration. The Court overrules this objection. Counsel has personal knowledge regarding settlement negotiations and the Court accepts the assertions made in the briefing as an avowal to the Court. Further, the parties essentially agree on what happened. The Court will not, however, consider post-trial settlement negotiations because that information is not relevant to whether the Plaintiffs achieved an "excellent result" at trial.

Once attorney's fees are awarded, Plaintiffs' total recovery will be significantly higher than Defendant's best offer of $175,000, which came shortly before trial. Plaintiffs also exceeded their own settlement offers from April 2020, December 2021 and May 2022. Although Plaintiffs did not better their $1.75 million offer from January of 2024, they will get close to that figure once attorney's fees are awarded. The history of the settlement negotiations relative to the final award to Plaintiffs further supports the Court finding that Plaintiffs' counsel achieved an "excellent result" at trial. When considered in that light, the monetary award from the jury was substantial. Accordingly, the Court will not reduce the lodestar figure arrived at below under the two-step process required under *Hensley* and *Schwarz*.

### ii. Reductions to the Specific Fee Motions
### FIRST FEE MOTION

The First Fee Motion requests an award of $774,653.85 in attorney's fees and related expenses. The motion covers from December 2019 to the end of trial in June 2024. As a threshold matter, the Court makes a reduction of $154,512 ($180 x 858.4 hours) from the amount requested because that amount assumes a $630 hourly rate for Mr. Moore and the Court has lowered his hourly rate to $450.

Defendant makes various objections to the First Fee Motion. With respect to the time entries and expenses recorded by Zwillinger Wulkan, the Court rules on Defendant's specific objections as follows. The Court sustains the vagueness objections to the entries on September 22, 25, 29, October 2, and November 22, 2023, which total .4 of an hour for Ms. Joachim's time and .3 of an hour for Mr. Wulkan's time. Doc. 315 at 12; Doc. 315-1 at 8–9, 12 (highlighted in pink). The Court also sustains the objections related to consultations on a "post-nup" agreement done by Ms. Joachim and will reduce the time by .5 of an hour. Doc. 315 at 12; Doc. 315-1 at 9, 11–12 (highlighted in blue). The Court overrules the objections related to work done by Mr. Wulkan with a probate attorney near the end of the trial. This time totaled one hour and occurred when judicial deception was the only claim remaining. The work was necessary and reasonable given that one of Mr.

1   Wulkan's clients is a disabled minor. Together, this results in a $292.50 reduction from the
2   requested amount.

3          The Court has also considered the remainder of the time entries made by Mr.
4   Wulkan's firm. The Court has evaluated whether the time spent was reasonable for the
5   work done. The Court has also considered whether the entries were too vague or improperly
6   block billed. The Court will allow travel time to be billed at only 50% of counsel's standard
7   hourly rate and, accordingly, makes a $3,062.50 reduction. The Court makes no further
8   reductions to the time claimed by Zwillinger Wulkan PLC.

9          Turning to the time entries submitted by Mr. Moore, Defendant first objects that Mr.
10  Moore's entries do not allow the Court to adequately evaluate what time was spent working
11  on claims and parties that were "unrelated" to the judicial deception claim. There were
12  claims and parties that Plaintiffs agree were "unrelated" to the Steins' judicial deception
13  claim. Mr. Moore claims to have "excised" this time from the time he claims now. He also
14  provided additional information at the Court's request explaining how he did this. The
15  Court is satisfied that he exercised appropriate billing judgment in this regard.

16         The Court has considered Defendant's objections, evaluated the individual time
17  entries, considered whether the time expended was reasonable for the task billed, and
18  considered whether, on a macro-level, the amount billed for each phase of the case was
19  reasonable. The Court has also considered on its own whether the entries were too vague
20  or improperly block billed, and made reductions deemed appropriate. The Court exercises
21  its discretion to make the following reductions:

22         • For the time claimed between December 20, 2019, and July 27, 2020, the Court
23             will reduce Mr. Moore's time by 6.9 hours and Ms. Joachim's time by 1.2 hours.
24             This results in a $3,315 reduction.

25         • For the time claimed between July 30, 2020, and April 29, 2021, the Court will
26             reduce Mr. Moore's time by 5.6 hours and Ms. Joachim's time by .7 hours. This
27             results in a $2,642.50 reduction.

28         • For the time claimed between October 1, 2021, and September 16, 2023, the

Court will reduce Mr. Moore's time by 17.8 hours and Ms. Joachim's time by 1.0 hours. This results in a $8,185 reduction.

- For the time claimed between September 26, 2023, and March 15, 2024, the Court will reduce Mr. Moore's time by 1.3 hours. This results in a $585 reduction.

- For the time claimed between September 26, 2023, and March 15, 2024, the Court will reduce Mr. Moore's time by 1.4 hours. This results in a $630 reduction.

The Court has reviewed the "related expenses" claimed by Zwillinger Wulkan and Mr. Moore. The Court overrules Defendant's objection that there are no supporting documents included with the application. Counsel has personal knowledge of the expenses incurred and the Court accepts the assertions made in the fee motion and supporting declarations as counsels' avowal. Also, the requests appear reasonable, appropriate, and clearly related to the litigation. Accordingly, the Court will award $16,084.85 for all related expenses requested in the First Fee Motion. The Court notes that many of the "expenses" claimed also qualify as taxable costs. The Court trusts counsel will be careful to avoid seeking to recover the expenses a second time as taxable costs.

Based upon the above, the Court makes a $173,224.50 reduction from the $774,653.85 request, and awards **$601,429.35** on the First Fee Motion. The Court finds this to be a reasonable amount for attorneys' fees and related costs incurred to accomplish the work reflected in the First Fee Motion.

### SECOND FEE MOTION

The Second Fee Motion seeks fees and expenses totaling $110,703.10 for work performed and related expenses incurred between July 3 to September 16, 2024. Doc. 308. Most of the work during this period involved post-trial motion practice.

Here, Defendant incorporates her prior general objections from the First Fee Motion. The Court has already ruled on those objections above. Again, the Court finds $450 is a reasonable hourly rate for both Mr. Wulkan and Mr. Moore. Since Mr. Moore

claims a $630 hourly rate in the Second Fee Motion, reducing his hourly rate to $450 results in a $14,202 reduction ($180 x 78.9 hours) from the requested amount.

Defendant objects that Mr. Wulkan billed time to handle a probate matter, related to a structed settlement for C.S. The amounts are de minimus. Mr. Wulkan's brief consultation with a probate lawyer was appropriate and necessary given that C.S. is a minor with disabilities. The objection is overruled.

Defendant objects to the time Plaintiffs spent responding to the post-trial motions and proposes an across-the-board 40 percent reduction. The objection is overruled. The motions filed by Defendant were extensive, convoluted, and oversized. Plaintiffs briefing was well done, and Plaintiffs prevailed on all but one issue. That one issue—remittitur of the award to C.S.—was relatively simple and overlapped with the remittitur issues related to the other two plaintiffs. The Court finds that the total time spent by Plaintiffs' counsel to respond to the post-trial motions was reasonable and necessary with one exception. The court will disallow the entry made by Mr. Wulkan on July 24, 2024, for .2 of an hour ("Research and email to Emily Kile regarding potential new client") because that entry is not clearly related. This results in a $90 reduction.

Defendant objects to the claimed costs for lack of supporting documentation. The costs claimed are to pay for trial transcripts. Plaintiffs undoubtedly incurred these costs, and Defendant should know that because she too presumably paid for trial transcripts. The $1,737.10 in costs are plainly recoverable. The objection is overruled.

Accordingly, the Court reduces Plaintiffs' $110,703.10 request by $14,292 and awards **$96,411.10** on the Second Fee Motion. The Court finds this to be a reasonable amount for attorneys' fees and related costs incurred to accomplish the work reflected in the Second Fee Motion.

**THIRD FEE MOTION**

The Third Fee Motion seeks $78,104.21 for attorneys' fees and related costs incurred between September 12, 2024, and May 21, 2025. Doc. 342. Defendant argues the Third Fee Motion is untimely. The Court disagrees. Defendant filed her post-trial motions

and then the case was stayed to allow the parties to participate in a settlement conference. After the settlement conference failed, litigation continued. Plaintiffs have acted in good faith and should, within reason, be awarded reasonable attorney's fees for working on the case, including time spent litigating their claim for attorney's fees.

Plaintiffs' Third Fee Motion seeks increased hourly rates for timekeepers beginning on January 1, 2025. The Court will not allow these rate increases because some of the increases seem excessive, and the increases are not sufficiently supported by the record. Also, the Court will only allow counsel to bill travel time at fifty percent of standard hourly rates. These changes result in a reduction of $5,718 from Plaintiffs' requested amount.

As for Mr. Moore's time entries, the Court makes the following downward adjustments based, in part, on Defendant's objections. The entries on 3/22/25 (.2) and 3/26/25 (1.0) are denied because they are administrative tasks. The entry on 5/21/25 (2.1) is denied because it appears to have been needed due to the less-than-efficient method Mr. Moore used to maintain his time records, which required him to go back through his Outlook Calendar and recreate time entries from the daily notations he makes there. Thus, subject to further reductions made below, the total time for Mr. Moore in the Third Fee Motion is reduced from 31 to 27.7 hours. Further, for reasons stated above, the Court finds that $450 (as opposed to $630) is a reasonable hourly rate for Mr. Moore. All other objections to Mr. Moore's time have been considered and are overruled. The above adjustments result in a reduction of $7,065.

Defendant objects as excessive to the 76 hours spent preparing Plaintiffs' Reply in support of the First Fee Motion and the Second Fee Motion. These 76 hours are in addition to the 46.8 hours spent drafting those two fee motions. The two responses to which Plaintiffs were replying totaled 26 pages, and the reply was 15 pages. The reply was well done and helpful to the Court. It addressed several substantive issues raised by Defendant's response, and Plaintiffs ultimately prevailed on most issues.

That said, the issues briefed in the reply are relatively routine and Plaintiffs' counsel is experienced and sophisticated. The Court finds 76 hours to be unreasonable, especially

1     relative to the amount of time spent drafting the two motions and supporting declarations.

2     To account for this, the Court will reduce the award under the Third Fee Motion by

3     $13,500.

4          Next, Defendant takes issue with the 29 hours claimed by Plaintiffs' counsel to draft

5     the Motion for Prejudgment Interest. The motion is four pages. This is a relatively routine

6     issue. Some of the research about interest rates appears never to have made it into the

7     motion. For example, the briefing does not suggest an interest rate or propose an amount.

8     In that regard, the briefing is not particularly helpful. Given all of this and the sums of

9     money at issue, the Court finds 29 hours to be excessive. Accordingly, the Court will reduce

10    the award under the Third Fee Motion by an additional $7,500.

11         Accordingly, the Court reduces the Plaintiffs' $78,104.21 request by $33,783 and

12    awards **$44,321.21** on the Third Fee Motion. The Court finds this to be a reasonable amount

13    for attorneys' fees and related costs incurred to accomplish the work reflected in the Third

14    Fee Motion.

15        **a. Consideration of the *Kerr* Factors**

16         Under Local Rule 54.2(c)(3), the Court considers several factors to assess whether

17    the lodestar is reasonable or should be adjusted. *Accord Hensley*, 461 U.S. at 429–30; *Kerr*,

18    526 F.2d at 70; *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992) ("[I]n rare cases,

19    a district court may make upward or downward adjustments to the presumptively

20    reasonable lodestar on the basis of those factors set out in *Kerr* . . . that have not been

21    deemed subsumed in the lodestar calculation."). Defendant requests a reduction in the fee

22    award based upon Plaintiffs' alleged lack of success and the *Kerr* factors. Doc. 315 at 17–

23    23; Doc. 317 at 3–4; Doc. 349 at 2–4. Several *Kerr* factors were already "subsumed" by

24    the Court's lodestar calculation. But the Court will briefly discuss a few of the most

25    relevant remaining factors.

26         *Time and Labor Required.* Plaintiffs had the right to pursue their claim. Plaintiffs'

27    counsel reports spending around 1900 hours across nearly five years to vindicate their

28    rights. Based on the Court's review of the billing entries, Plaintiffs' counsel does not appear

1  to have engaged in misconduct or unjustified fee-generating.

2       *Novelty and Difficulty.* The legal questions involved here were novel and difficult.

3  Plaintiffs' allegation that "this is the very first verdict in a judicial deception case against a

4  social worker for an agency like DCS" appears correct. *See* Doc. 268 at 16.

5       *Skill Required.* Legal expertise aside, the subject matter here required a thorough

6  understanding of federal law governing judicial deception claims and Arizona dependency

7  law. Further, it required a range of legal skills and expertise to handle discovery, dispositive

8  motions, mediation, and trial. Plaintiffs' team is made up of skilled trial lawyers.

9       *Preclusion of Other Employment.* Mr. Moore is a plaintiff's attorney. As a sole

10 practitioner he can take only so many cases. He devoted significant time and resources to

11 the Steins' case across nearly five years. He necessarily forewent other opportunities to do

12 so. So did Mr. Wulkan and his firm.

13      *The Amount Involved and the Results Obtained.* The Court already addressed this

14 above. The results also provided a public benefit by ensuring the constitutional rights of

15 families are protected. *See, e.g.*, *Morales*, 96 F.3d at 364 (civil and constitutional rights

16 "cannot be valued solely in monetary terms"); *Hensley*, 461 U.S. at 438 ("relief affects not

17 only [respondents], but also numerous other institutionalized patients similarly situated").

18      *Experience, Reputation, and Ability of the Attorneys.* The attorneys were well

19 qualified, with technical expertise and legal experience. Briefing from Plaintiffs' counsel

20 was typically focused, correct, and helpful to the Court. Plaintiffs' counsel also performed

21 well at trial.

22      *The "Undesirability" of the Case.* Lawyers are not lining up to take cases against

23 DCS workers like this one. Plaintiffs' counsel took this case facing a qualified immunity

24 defense and understanding that the State of Arizona would pay for the defense and cover

25 any judgment entered. Further, counsel pursued a somewhat novel legal claim to prevail

26 against capable defense counsel. This was not a "desirable" case.

27      Based on a consideration of all *Kerr* factors, the lodestar as calculated above is

28 reasonable and the Court will make no further adjustments.

## V.     PREJUDGMENT INTEREST

Plaintiffs argue they are entitled to prejudgment interest as requested in the First Amended Complaint because it is a necessary component to make Plaintiffs whole and it compensates for the years-long delay in obtaining relief. Doc. 335 at 2–3. Plaintiffs request the Court calculate prejudgment interest starting from the date of injury (October 14, 2019) and compound it annually until the entry of final judgment. *Id.* at 4–5. Defendant argues the Court should not award prejudgment interest because it is fundamentally unfair to charge interest on unliquidated damages, Plaintiffs never explained how the compensatory damages failed to make them whole, and the balance of equities favors denying prejudgment interest. Doc. 347 at 2–5. Alternatively, Defendant argues, if the Court awards prejudgment interest, it should begin accruing the day after service of the Complaint, May 1, 2020—using the interest rate in effect on that date, 0.168%—and continue until the Court entered judgment on August 13, 2024. *Id.* at 5–8. Plaintiffs' Reply requests the Court first determine (1) whether prejudgment interest is appropriate, (2) the date of accrual, and (3) the proper interest rate, and then, after issuing those findings, the Court can compute the final amount of interest. Doc. 352 at 5.

### a.  The equities favor awarding prejudgment interest.

Prejudgment interest is meant to be compensatory, not punitive. *Western Pac. Fisheries, Inc. v. SS Pres. Grant*, 730 F.2d 1280, 1288 (9th Cir. 1984). Prejudgment interest is available for unliquidated, noneconomic damages (e.g., pain and suffering) as much as for "purely economic" damages. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Murphy v. City of Elko*, 976 F. Supp. 1359, 1364 (D. Nev. 1997)). Section 1983 is silent about prejudgment interest, but the intent of the statute is to fully compensate for injury. *See Carey v. Piphus*, 435 U.S. 247, 254 (1978). Thus, prejudgment interest is available on a § 1983 claim if the court determines it necessary to make the wronged party whole. *See Schneider v. Cnty. of San Diego*, 285 F.3d 784, 791 (9th Cir. 2002) (collecting cases). "[W]hether [prejudgment] interest will be awarded is a question of fairness, lying within the court's sound discretion to be answered by balancing the equities." *Wessel v.*

*Buehler*, 437 F.2d 279, 284 (9th Cir. 1971).

After considering the interests of fairness, making Plaintiffs whole, and balancing the equities, the Court finds it is appropriate to award prejudgment interest here. While Plaintiffs' damages were difficult to calculate with any certainty, courts have routinely assessed prejudgment interest on unliquidated claims. Equities that favor awarding prejudgment interest here are: (1) Defendant, as wrongdoer, should bear the risk of nonpayment throughout the lengthy litigation period; (2) there is no evidence Plaintiffs acted in bad faith to lengthen the litigation; (3) Defendant should not benefit from the significant historic inflation between the date of injury and judgment (allowing Defendant to, essentially, pay 2019 damages at "discounted" 2024 dollars); and (4) Plaintiffs were entitled to monetary damages starting long before judgment and should be compensated for that time the money was withheld. *See, e.g.*, *Golden State Transit Corp. v. City of Los Angeles*, 773 F. Supp. 204, 214–15 (C.D. Cal. 1991). The balance of equities favors granting prejudgment interest to Plaintiffs here because it would "best ensure that the purpose of § 1983, to compensate the injured plaintiff, is accomplished." *Id.* at 216.

### b. Calculating the timeframe and rate for prejudgment interest.

The Court has broad discretion to calculate the starting date for prejudgment interest. While many courts seem to favor using the date of injury or claim accrual, *e.g.*, *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987); *Barnett v. Sea Land Service, Inc.*, 875 F.2d 741, 747 (9th Cir. 1989), other courts have used the date following service of the complaint, *e.g.*, *Golden State Transit*, 773 F. Supp. at 220, or the date following the jury's verdict, *e.g.*, *Murphy v. City of Elko*, 976 F. Supp. 1359, 1364 (D. Nev. 1997). This case initially included three plaintiff–families and fifteen defendants, which complicated the claims, lengthened the litigation, and necessitated two amended complaints. Accordingly, the Court will use the date after Plaintiffs filed the Second Amended Complaint, September 9, 2020, as the starting date for calculating prejudgment interest.

The Ninth Circuit generally uses the federal post-judgment interest statute, 28 U.S.C. § 1961(a), for calculating the prejudgment interest rate, "unless the trial judge

finds, on substantial evidence, that the equities of the particular case require a different rate." *Western Pac. Fisheries*, 730 F.2d at 1289. Under § 1961(a), the interest rate corresponding to September 9, 2020, was 0.12%. However, due to the COVID-19 pandemic, interest rates were exceptionally low during the period of March 2020 through February 2022. There is substantial evidence that using the 0.12% interest rate would, in effect, deny Plaintiffs prejudgment interest. *See Knox v. Chiang*, 2:05-cv-02198-MCE-CKD, 2013 WL 2434606, at *14 (E.D. Cal. June 5, 2013) (finding 0.18% interest rate "exceptionally low" from a historic perspective and comparatively low for the timespan of the case). Thus, in the interest of equity, the Court will use the § 1961(a) interest rate corresponding to the date of injury (October 14, 2019), which was 1.63%.

"[P]rejudgment interest should be calculated until the entry of judgment on the jury verdict." *Golden State Transit*, 773 F. Supp. at 220. Here, the Court entered judgment on August 13, 2024. Doc. 300. Thus, the period for calculating prejudgment interest is from September 9, 2020, through August 12, 2024.

Under § 1961(b), interest is computed daily and compounded annually. *Cf. Golden State Transit*, 773 F. Supp. at 219; *South Coast Cab Co. v. City of Anaheim*, 2007 WL 9723540, *4 (C.D. Cal. Jan. 22, 2007); *Murphy*, 976 F. Supp. at 1364. Thus, the total prejudgment interest accrued on Plaintiffs' damages ($526,800 multiplied by 1.63% and compounded annually) is $34,531.38. The Court provides the following table to show these calculations:

| Time period | 9/9/20–9/8/21 | 9/9/21–9/8/22 | 9/9/22–9/8/23 | 9/9/23–8/12/24[5] |
|---|---|---|---|---|
| Starting balance | $526,800.00 | $535,386.84 | $544,113.65 | $552,982.70 |
| Interest accrued | $8,586.84 | $8,726.81 | $8,869.05 | $8,348.68 |
| Ending balance | $535,386.84 | $544,113.65 | $552,982.70 | $561,331.38 |

///

///

///

---

[5] This period includes 339 days, and the interest calculation accounts for the 2024 leap day.

1

## VI.    CONCLUSION

Based upon the foregoing,

**IT IS HEREBY ORDERED** that Plaintiffs' First Fee Motion (Doc. 268), Second Fee Motion (Doc. 308), and Third Fee Motion (Doc. 342) are all **GRANTED IN PART** and Plaintiffs are awarded **$742,161.66** total in attorneys' fees and related expenses.

**IT IS FURTHER ORDERED** Plaintiffs' motion for Assessment of Prejudgment Interest (Doc. 335) is **GRANTED**. Defendant shall pay **$34,531.38** total in prejudgment interest on the compensatory damages awarded.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Supplement the Record (Doc. 336) is **DENIED**.

Plaintiffs' motions for Attorneys' Fees and Nontaxable Costs have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59. *See* Fed. R. Civ. P. 58(e). This Order disposes of the same and begins the time to file an appeal.

Dated this 23rd day of July, 2025.

John C. Hinderaker
United States District Judge